488 So.2d 362 (1986)
Alla Mae Cormier SABRI, Plaintiff-Appellant,
v.
STATE FARM FIRE & CASUALTY COMPANY, Defendant-Appellee.
No. 85-495.
Court of Appeal of Louisiana, Third Circuit.
May 14, 1986.
*363 William J.F. Gearheard, Lafayette, for plaintiff-appellant.
Roy, Forrest & Lopresto, Jackson B. Bolinger, Lafayette, for defendant-appellee.
Before DOMENGEAUX and YELVERTON, JJ., and JACKSON, J. Pro Tem.[*]
DOMENGEAUX, Judge.
This appeal arises from a suit for damages instituted by plaintiff-appellant, Alla Mae Cormier Sabri, against defendant-appellee, State Farm Fire & Casualty Company, the plaintiff's father's homeowners insurer. The plaintiff-appellant filed suit seeking damages as a result of a gunshot wound which she received when her father, Paul L. Cormier, discharged his revolver hitting her, believing that he was defending his home. The defendant-appellee countered by pleading that the damages were not compensable under the terms of a policy exclusion denying coverage for "bodily injury ... which is expected or intended by the insured." The district court ruled that although Mr. Cormier did not intend to shoot his daughter, his actions in firing the shots at whom he presumed to be an intruder in his home constituted an intentional act, and therefore there was no coverage under the policy. The district court dismissed the plaintiff's suit and the plaintiff appeals that decision.
The basic facts of this case are uncontested. On the evening of August 25, 1983, the plaintiff, after engaging in a domestic dispute with her former husband with whom she lived, left her home accompanied by her minor daughter intending to seek refuge in the home of her father, Paul L. Cormier. The plaintiff did not give her father advance notice that she was coming to his home. Mr. Cormier, a widower, had given a key to his home to each of his two daughters, and it was their custom to visit without giving prior notice.
Meanwhile, Mr. Cormier had retired for the evening. Mr. Cormier testifies that at approximately 10:15 P.M. he went into his room and entered his bed but that he did not fall asleep immediately. After a short *364 while he heard suspicious noises at his front door and he attested that he thought it was someone trying to pick his lock or taking the stiles out of the side of his door. Unfortunately, the noises Mr. Cormier mistook for a burglar attempting to gain entry to his home was actually his daughter and granddaughter struggling to get Ms. Sabri's key into the door. The reason Ms. Sabri was having difficulty in getting her key into the door was that Mr. Cormier had left his house key inserted in the lock on the interior side of the front door.
Hearing the noises, Mr. Cormier testified that he "got fears", speculated that a burglar was at his door, picked up his loaded revolver and worked his way to the door. Upon entering the front room, his keys, which were kept on the inside of the lock, popped out of the lock and crashed to the floor. What caused this to happen was that Ms. Sabri had finally been successful in placing her keys into the lock from the exterior side thereby ejecting Mr. Cormier's keys from the interior lock.
After the keys fell to the floor, the door immediately opened and Mr. Cormier saw a figure enter the room. He aimed at the first figure and fired. At the same instant a second, larger figure emerged through the door. This second figure was much larger than the first figure (Ms. Sabri was 5'6" tall and weighed 280 lbs.) and Mr. Cormier explained that he felt threatened by this second figure. Mr. Cormier then fired a second shot which struck and wounded the second figure. As it turned out, the first figure was Mr. Cormier's granddaughter, who, luckily he missed, and the second figure was his daughter, Ms. Sabri. Upon discovering whom he had shot Mr. Cormier summoned an ambulance and the police.
As a result of the shooting, plaintiff filed a petition for personal injuries against State Farm Fire & Casualty Company, Mr. Cormier's homeowner's insurer. State Farm answered, alleging that the terms and conditions of the policy precluded coverage.
State Farm subsequently filed a motion for summary judgment, arguing that an exclusion in the policy issued to Mr. Cormier absolved it from paying on the policy. That exclusion provides:
"1. Coverage LPersonal Liability and Coverage MMedical Payments to Others do not apply to:
a. bodily injury or property damage which is expected or intended by the insured;"
The defendant averred that Ms. Sabri's bodily injury was expected or intended by Mr. Cormier and therefore the policy did not provide coverage. The district judge denied the defendant's motion and referred the case to the merits.
After a trial on the merits, the district judge held that the above quoted policy exclusion would apply to preclude the plaintiff from recovering on the policy and dismissed the plaintiff's case. In his oral reasons for judgment which were transcribed into the record, the district judge made the following factual determinations and conclusions:
"Mr. Paul L. Cormier did not intend to shoot his daughter, Plaintiff Alla Cormier Sabri, but at the time he fired the shots, he intended to hit whoever the intruders were and to stop them because he feared they would harm him and burglarize his home. At the time of this incident Mr. Cormier had a homeowner's insurance policy in effect with the defendant, which contained the following exclusion: Under (1) Coverage LPersonal Liability, and Coverage M: `Medical payments to others do not apply to (a) bodily injury or property damage which is expected or intended by the insured.'
* * * * * *
In this case Mr. Cormier testified, and the Court also finds, that at the distance from which he fired the shot he could not have missed, and he intended to stop the person he thought was a burglar. Unfortunately, the intruder turned out to be his daughter, the plaintiff. But for the purposes of coverage I find that his acts were intentional, and therefore, there is *365 no coverage under the policy issued by the defendant."
The plaintiff appealed the decision of the district court and cites as error the district judge's finding that the policy excluded recovery for the plaintiff's damages. More specifically, the plaintiff alleges that the district judge erred in finding that "Paul Cormier's acts were intentional in the shooting of his daughter, plaintiff herein, Alla Sabri."
Our inquiry necessarily revolves around the issue of whether the serious injuries sustained by the plaintiff were intended[1] by Mr. Cormier and, consequently whether there is coverage under the policy.
This Circuit has interpreted the policy exception here at issue and exceptions worded similarly to mean that liability is not precluded for an expected or intended "act," but rather for an expected or intended "injury." When the act is intentional, but the injury is not, the exclusionary clause is not applicable. Rambin v. Wood, 355 So.2d 561 (La.App. 3rd Cir.1978), and Bourque v. Duplechin, 331 So.2d 40 (La. App. 3rd Cir.1976), writ denied, 334 So.2d 210 (La.1076). See also Sherwood v. Sepulvado, 362 So.2d 1161 (La.App. 2nd Cir. 1978).
Recently, in Pique v. Saia, 450 So.2d 654 (La.1984), the Louisiana Supreme Court had occasion to interpret an exclusion similar to the one here before us, holding:
"An injury is intentional, i.e. the product of an intentional act, only when the person who acts either consciously desires the physical result of his act, whatever the likelihood of that result happening from his conduct; or knows that that result is substantially certain to follow from his conduct, whatever his desire may be as to the result."
Here, we cannot say that the injury to Ms. Sabri was intended. We find in this instance that Mr. Cormier's failure to ascertain the identity of the figure entering his home before firing his pistol was negligence but does not constitute an intentional injury. Mr. Cormier's "act" of firing the pistol was intended. However, an "injury" to his daughter who entered his home seeking refuge was not intended.
We were particularly persuaded that the result reached herein is correct in view of the purpose behind an exclusionary clause which precludes the insurer from coverage for injuries intended by the insured. The intent behind such a limitation is "to prevent extension to [the insured] of a license to commit whatever wanton and malicious acts he wished." See Brasseaux v. Girouard, 269 So.2d 590 (La.App. 3rd Cir. 1972), writ denied, 271 So.2d 262 (La.1973).
Certainly, Mr. Cormier did not intend to injure his daughter, and ruling that there is coverage in such an instance as this,
"... tends to promote the fulfillment of the reasonable expectations of the insured and the injured, and at the same time will tend to promote the public policy of excluding coverage where there is a deliberate intention to cause physical harm or where, ... such intention must be attributed as a matter of law because the acts are of such a nature that the injury must necessarily be expected."
Rambin v. Wood, supra, citing State Farm Fire & Casualty Company v. Muth, 190 Nebraska 248, 207 N.W.2d 364 (1973).
We therefore hold that there is coverage under the policy for this incident and accordingly reverse the district court.
Generally, the Courts of Appeal are empowered to award damages in cases where the trier of fact initially erroneously rejects the plaintiff's demands and the record is complete with regard to damages. La.C.C.P. Art. 2164. Dupree v. Louisiana Transit Management, Inc., 441 So.2d 436 (La.App. 2nd Cir.1983), writ denied, 445 So.2d 1233 (La.1984).
Here, we feel compelled to remand this case to the district court for further evidence *366 to be offered and a determination to be made on the issue of damages. This conclusion is necessitated by the lack of specificity on the issue of future medical treatments and the possible incompleteness of the record on the issue of damages.
For the above and foregoing reasons the decision of the district court is reversed and the case is remanded to the district court for a determination of a damage award. All costs to be assessed against defendant.
REVERSED AND REMANDED.
NOTES
[*] Judge Robert P. Jackson of the Ninth Judicial District Court participated in this decision by appointment of the Louisiana Supreme Court as Judge Pro Tempore.
[1] We need not consider whether the injury was "expected" by the insured as the Louisiana Supreme Court [ruling on a similar policy exclusion] in Pique v. Saia, infra, has held that term to be ambiguous and did not consider that term.