568 So.2d 1293 (1990)
Faye SPENGLER, Appellant,
v.
STATE FARM FIRE AND CASUALTY COMPANY and Andreu Harvey, Appellees.
No. 89-3164.
District Court of Appeal of Florida, First District.
October 8, 1990.
Karen K. Cole of Boyd & Jenerette, P.A., Jacksonville, for appellant.
*1294 Ada A. Hammond of Taylor, Day & Rio, Jacksonville, for appellees.
ZEHMER, Judge.
Faye Spengler appeals a summary final judgment for State Farm Fire and Casualty Company. The trial court ruled as a matter of law that the State Farm homeowner's insurance policy issued to Andreu Harvey, which included an intentional harm exclusion, did not cover injuries caused to Spengler when Harvey mistakenly shot her. We reverse, holding that the intentional harm exclusion does not apply under the circumstances of this case since the insured's intent to harm was not directed against the person who actually suffered harm. For purposes of reviewing this summary judgment, we accept the following facts as undisputed.
On April 4, 1988, Harvey shot Spengler, mistakenly believing her to be a burglar. They had been dating each other for approximately 5 months at the time of the shooting and had a good relationship. On the evening of April 3, they ate dinner and watched television at Harvey's home and went to bed there at approximately 11:00 p.m. The home was located in a neighborhood that was plagued with crime, and it had been burglarized on two occasions prior to April 3. As a result, Harvey kept a handgun in a holster hanging on the head-board of his bed, so that he could quickly reach it if needed for protection. Just after midnight, Spengler arose from the bed she and Harvey shared and walked to the bathroom. Harvey, hearing a noise from the bathroom, awoke. A street light shone dimly through the hallway near the bathroom. Harvey, who was aware that one of the two previous burglaries of his house was effected by entry through the bathroom window, concluded that a burglar was in his home. Thinking Spengler was still in the bed next to him, he whispered, "Did you hear that?" He then saw a shadowy figure walk through the bedroom door and shot three times in its direction. Spengler screamed and fell to the floor after the first shot. Harvey, however, did not realize he had shot Spengler until she called his name after the third shot. Harvey intended to shoot an unknown intruder, but he did not intend to shoot Spengler; he would not have fired the gun had he realized the shadowy figure walking toward him was Spengler, rather than an intruder.
Spengler sued Harvey for negligence "in discharging a firearm in the dark without determining the location of plaintiff Faye Spengler and without confirming his erroneous assumption that the person at whom he shot was an intruder." (R. 114). State Farm Fire and Casualty Company, Harvey's homeowner insurer, then filed a separate declaratory judgment action contending that Harvey's homeowner's policy did not cover Spengler's injuries because it contained a policy provision excluding coverage for bodily injury that is either expected or intended by the insured.[1] The trial court granted summary judgment in favor of State Farm, and Spengler appeals.
The narrow issue raised in this case is whether the homeowner's insurance policy provision excluding coverage for bodily injury that is either expected or intended by an insured precludes recovery where the insured's intent to harm a person did not encompass the person who suffered the harm resulting from the insured's act. There is no Florida court decision on the precise issue presented by the facts of this case. Thus, we must look to other jurisdictions for cases construing and applying the intentional harm exclusion for guidance in deciding this case.
To our knowledge, only one out-of-state case, Sabri v. State Farm Fire and Casualty Co., 488 So.2d 362 (La. App.), writ denied, 493 So.2d 630 (La. 1986), involves the precise issue before us based on *1295 the same policy language. In Sabri, the insured was going to sleep one night when he heard suspicious noises at his front door and thought they were caused by a burglar trying to pick the lock. Actually, the noises were caused by his daughter and granddaughter, who had come to his house from their own home and were trying to insert a key into the insured's front door. The insured picked up his loaded revolver, approached the front door, and when he saw the figures enter, fired at them. The insured's daughter was injured, and she filed suit against her father's insurer, State Farm, under the homeowner's policy, claiming that he negligently shot her. State Farm moved for summary judgment, alleging that the policy exclusion for "bodily injury or property damage which is expected or intended by the insured" precluded coverage. The trial court denied this motion and tried the case on the merits. After hearing all the evidence, the trial court entered judgment for State Farm on the exclusion, ruling that the insured's "acts were intentional, and therefore, there is no coverage under the policy." 488 So.2d at 364-65. Reversing, the appellate court first noted that the policy exception at issue and exceptions similarly worded mean that liability is not precluded for an expected or intended "act" but rather for an expected or intended "injury" and that when the act is intentional, but the injury is not, the exclusionary clause is not applicable. The court then held that the insured's failure to ascertain the identity of the figure entering his home before firing his pistol was negligence, but did not constitute an intentional injury within the policy exclusion because the insured did not intend to injure his daughter. Although the "act" of firing the pistol was intended, the "injury" to his daughter who entered his home was not intended. 488 So.2d at 365. The Sabri court stated that the purpose behind the exclusionary clause is to avoid "licensing" an insured to commit whatever wanton and malicious acts he wishes, and that affording coverage in cases such as this
`... tends to promote the fulfillment of the reasonable expectations of the insured and the injured, and at the same time will tend to promote the public policy of excluding coverage where there is a deliberate intention to cause physical harm or where, ... such intention must be attributed as a matter of law because the acts are of such a nature that the injury must necessarily be expected.'
488 So.2d at 365, quoting Rambin v. Wood, 355 So.2d 561 (La. App. 1978). We agree with this construction and application of the policy exclusion and adopt it in this case.
A Florida case that is closely, although not completely, similar on the facts to the instant case is Grange v. Thomas, 301 So.2d 158 (Fla. 2d DCA 1974). In Grange, the insured shot Thomas, a nonparticipant observer in a family quarrel in which the insured was involved. The facts showed that the bullet was not intended for Thomas, but might have been intended for someone else. The second district ruled that the provision of the insured's policy that excluded coverage for bodily injury that is expected or intended by the insured did not apply to that situation. In so holding, the court stated:
... unless the wrongful act complained of is intentionally directed specifically toward the person injured by such act, the injury, as to that victim, is an accident or `occurrence' for which an insured tortfeasor may become legally answerable in damages as contemplated by the coverage provision of his homeowners liability policy.
301 So.2d at 159 (emphasis added). Grange is distinguishable from the instant case in that the insured did not intend to shoot at the person of Thomas, whereas, in the instant case, the insured did intend to shoot at the figure that he mistakenly thought to be a burglar. However, Grange provides strong support for the construction that an insurance policy exclusion for intentional injuries does not apply where the insured intends the act that causes an injury but does not intend to injure the person actually injured by such act.
As primary support for their position that the policy exclusion precludes recovery in this case, State Farm cites Peters v. Trousclair, 431 So.2d 296 (Fla. 1st DCA *1296 1983). In that case, Trousclair, the insured, was a riverboat pilot whose occupation required extended absences from his home and wife. During one of his absences, his wife's cousin, Peters, who had met Trousclair briefly on two prior occasions and was invited by Trousclair to stay in his home, resided in the insured's home for several days. Also during this time, one Humphreys, not at Trousclair's invitation, was also residing at the home, having become amorously involved with Mrs. Trousclair. Trousclair, unaware that Peters was staying in his home and not being familiar with him, returned to his home in the early morning hours and saw Peters and Humphreys lounging in the living room with his wife but failed to recognize either of them. In a fit of jealous rage because he believed Peters to be his wife's lover, Trousclair burst into the room, grabbed Peters and repeatedly stabbed him, causing serious injuries. Trousclair then pursued Humphreys and attacked him. Soon realizing who Peters was, Trousclair rushed him to the hospital. Peters sued Trousclair, and Trousclair requested that his homeowner's insurer, American Liberty Insurance Company, provide a defense. American Liberty denied coverage on the ground that Trousclair's policy contained a provision excluding coverage for bodily injury expected or intended by the insured. This court held that American Liberty properly denied coverage, reasoning that although the insured was unaware at the time of the stabbing of the identity of Peters as being his wife's cousin, he nonetheless intentionally and specifically directed the injurious act toward the person of Peters and thus intended to cause him injury. This critical fact, the court said, distinguishes the case from the Grange case.
We find Peters v. Trousclair materially distinguishable from this case because Trousclair, the insured, intended to injure the person of Peters while not realizing that Peters was his wife's cousin. Here, Harvey did not intend to injure the person of Spengler; he intended to shoot at what he perceived to be a burglar, not his lover. We recognized in Peters that because the insured's act was "`deliberately designed to cause harm' to Peters" at the time it was committed, there was no negligence on the part of the insured. 431 So.2d at 297. In the instant case, Harvey's act of shooting Spengler was, as was the insured's act in Sabri, an act of negligence insofar as Spengler was concerned. We again emphasize, as we did in Peters, that under Florida law, insurance "coverage is not excluded as a matter of law where there was an `intentional act' but not an `intentionally caused' injury," and that
Running through all of these cases is an act of negligence by the insured, sometimes gross or even culpable negligence. But never has coverage been found under such policies where the insured's act was deliberately designed to cause harm to the injured party. (emphasis added).
431 So.2d at 297, quoting Hartford Fire Insurance Company v. Spreen, 343 So.2d 649 at 651 (Fla. 3d DCA 1977). We then concluded that "Peters was the immediate and intended object of [Trousclair's] wrath" and "that Trousclair's act was `deliberately designed to cause harm' to Peters at the moment he committed the act." Id. at 297-98.
The other cases on which State Farm relies are similarly distinguishable. Landis v. Allstate Ins. Co., 546 So.2d 1051 (Fla. 1989), was a case where the insureds, who operated a child care facility in their home, sexually battered children under their care. The Supreme Court held that the insureds' homeowner's policy provision, "We do not cover bodily injury intentionally caused by an insured person," applied to exclude coverage regardless of whether the insureds had the specific intent to cause harm, because the harm the children suffered inevitably flowed from the insureds' acts. 546 So.2d at 1053. In other words, the insureds' intentional acts toward the children which in natural course would and did produce injury fell within the policy exclusion. In State Farm v. Marshall, 554 So.2d 504 (Fla. 1989), and Clemmons v. American States, 412 So.2d 906 (Fla. 5th DCA 1982), the insureds, while acting in self-defense, injured the attackers, obvious intentional injuries. Unlike this case, neither Marshall nor Clemmons was a case of mistaken identity; rather, the acts of the *1297 insureds were specifically directed toward the persons ultimately injured. But most significantly, in none of these three cases could it be said that the insured's acts constituted negligence.
Upon close analysis, we find no inconsistency in the cases cited by both parties to this appeal. Because of the similarity of the factual situations they address, each must be carefully read and applied to the precise factual situation presented. Here, the issue is whether the exclusion applies to preclude coverage where the insured's intent to harm is directed against a person mistakenly believed to be one other than the person who suffers harm because the insured negligently failed to identify the shadowy form in his doorway. Only Sabri v. State Farm, 488 So.2d 362 (La. App.), writ denied, 493 So.2d 630 (La. 1986), addresses this precise issue in construing identical policy language, and it holds that the exclusion does not apply.
The summary final judgment is reversed and this cause is remanded for further proceedings consistent with this opinion.
REVERSED AND REMANDED.
SMITH and NIMMONS, JJ., concur.
NOTES
[1] The language in the State Farm policy reads:

1. Coverage L and Coverage M do not apply to
a. bodily injury or property damage:
(1) which is either expected or intended by an insured; or
(2) to any person or property which is the result of willful and malicious acts of an insured;
(R. 11).