622 So.2d 467 (1993)
PRUDENTIAL PROPERTY AND CASUALTY INSURANCE COMPANY, Petitioner,
v.
Larry S. SWINDAL, et al., Respondents.
No. 80217.
Supreme Court of Florida.
July 1, 1993.
Rehearing Denied August 26, 1993.
*468 Raymond T. Elligett, Jr. and Charles P. Schropp of Schropp, Buell & Elligett, P.A., Tampa, for petitioner.
W.C. Airth, Jr. of Williams & Airth, P.A., Orlando, for respondent.
BARKETT, Chief Justice.
This case is before us on the following question certified by the Second District Court of Appeal as one of great public importance:
DOES THE "INTENTIONAL ACT" EXCLUSION IN A TYPICAL HOMEOWNERS INSURANCE POLICY EXCLUDE COVERAGE FOR INJURIES ARISING OUT OF AN INCIDENT INVOLVING AN INTENTIONAL TORT IF THE INJURIES "INEVITABLY FLOW" FROM THE INSURED'S INTENTIONAL ACT, BUT ARE "PROXIMATELY CAUSED" BY A NEGLIGENT ACT?
Swindal v. Prudential Property & Casualty Ins. Co., 599 So.2d 1314, 1319 (Fla. 2d DCA 1992).[1] We rephrase the question in conformity with facts presented to ask:
DOES A HOMEOWNERS INSURANCE POLICY'S "INTENTIONAL INJURY" EXCLUSION CLAUSE EXCLUDE COVERAGE FOR BODILY INJURIES SUSTAINED WHERE THE INSURED COMMITTED AN INTENTIONAL ACT INTENDING TO CAUSE FEAR, BUT BODILY INJURIES MAY HAVE BEEN CAUSED ACCIDENTALLY AND WERE NOT EXPECTED OR INTENDED BY THE INSURED TO RESULT?
We answer the question as rephrased in the negative and approve the decision below.
Larry S. Swindal suffered permanent head injuries when Nicholas Castellano's gun discharged during the course of an argument. The shooting resulted in three separate legal actions in the circuit court and two district court appeals. In one circuit court action, Castellano was charged with a criminal offense but was acquitted by a jury. In a second case, Swindal filed a *469 civil action against Castellano.[2] The instant case is a declaratory judgment action filed by Petitioner, Prudential Property and Casualty Insurance Company, against Swindal and Castellano based on the homeowners insurance policy it issued to Castellano.
The facts of this case are essentially as follows.[3] Castellano and Swindal were involved in an ongoing feud during 1983. In July 1983, Swindal held Castellano at gunpoint for forty-five minutes. On August 15, 1983, after an unsuccessful effort to resolve their differences at a citizen's dispute settlement mediation meeting,[4] Swindal drove through Castellano's circular driveway with a hammer in his hand. Castellano believed that Swindal was holding a gun. Castellano then obtained a handgun from his closet, apparently meaning to frighten Swindal, got in his car, and chased Swindal.
When Castellano caught up with Swindal, he approached Swindal's car with his loaded handgun, safety off, finger on the trigger. He reached inside Swindal's car with both hands to grab what he thought was a gun. Swindal then grabbed Castellano's gun and, in the struggle, the gun fired causing severe and permanent bodily injury to Swindal. Castellano said he never intended to shoot him. Rather, Castellano maintains that the gun accidentally discharged.
Prudential's complaint for declaratory judgment alleged that Prudential had no duty to pay under these facts pursuant to the intentional injury exclusion of the policy. The circuit court originally dismissed the case for lack of jurisdiction, but the Second District reversed and remanded with instructions that the circuit court determine whether Swindal's injury was caused by accidental or intentional conduct for the purposes of deciding Prudential's then-pending summary judgment motion. Prudential Property & Casualty Ins. Co. v. Castellano, 571 So.2d 598 (Fla. 2d DCA 1990) (Prudential I).
Upon remand, the circuit court granted summary judgment in favor of Prudential. The court stated that it was "troubled by the public policy ramifications of providing insurance coverage for insureds who engage in intentional, aggressive conduct which then results in injury to their victims." The court held that Swindal's injuries were excluded from coverage under the policy because "the undisputed facts compel the conclusion that the insured intended some harm to Swindal."
The Second District again reversed. Swindal v. Prudential Property & Casualty Ins. Co., 599 So.2d 1314 (Fla. 2d DCA 1992) (Prudential II). The court held that the intentional injury exclusion in Castellano's policy did not exclude coverage for Swindal's injuries unless they were
the direct and proximate result of an intentional act. If the damages are caused by a separate act of negligence, even if it occurs in the same general time frame as some intentional act, the damages are not excluded if they are the result of an unexpected or unintended negligent act and are not the result of an intentional act.
Id. at 1318 (footnote omitted). The district court concluded that Swindal's gunshot wound was either the result of "an intentional battery with a deadly weapon or ... a negligent discharge of the weapon." The act of assault with a firearm was the only undisputed intentional act shown on the record, and that was insufficient to satisfy the exclusion because the injury was not caused by the act of intentionally causing *470 fright.[5]Id. On this record, the district court said, there remains a disputed question of fact as to whether the gun was fired intentionally or accidentally. Without knowing whether the injury was caused by intentional or negligent conduct, the court could not decide whether Castellano "expected or intended to cause bodily injury" within the language of the policy. Therefore, the court remanded the case for trial to determine whether the gun was fired intentionally or negligently.
However, the Second District Court of Appeal was unsure of its analysis in light of Landis v. Allstate Insurance Co., 546 So.2d 1051 (Fla. 1989), and State Farm Fire & Casualty Co. v. Marshall, 554 So.2d 504 (Fla. 1989). The court said it could not determine whether Landis changed the intentional injury exclusion into a broader intentional acts exclusion that would exclude coverage for damages that "inevitably flow" from an intentional act but are proximately caused by a separate negligent act. Because the district court believed that its opinion "could impact on standard language in virtually every homeowners insurance policy in Florida," 599 So.2d at 1316, it certified the question for our review.
Florida law has long followed the general rule that tort law principles do not control judicial construction of insurance contracts. Insurance contracts are construed in accordance with the plain language of the policies as bargained for by the parties. Ambiguities are interpreted liberally in favor of the insured and strictly against the insurer who prepared the policy. Gulf Life Ins. Co. v. Nash, 97 So.2d 4, 9-10 (Fla. 1957); see also, e.g., Stuyvesant Ins. Co. v. Butler, 314 So.2d 567, 570 (Fla. 1975); Poole v. Travelers Ins. Co., 130 Fla. 806, 814, 179 So. 138, 141 (1937). Thus, intentional act exclusions are limited to the express terms of the policies and do not exclude coverage for injuries more broadly deemed under tort law principles to be consequences flowing from the insured's intentional acts.
For example, in Gulf Life Insurance Co. v. Nash, the insured attempted to frighten his friends by holding a gun to his own chest and pulling the trigger three times, believing all three chambers to be empty. The insured was killed when the gun discharged on the third trigger pull. The insured's "act" in pulling the trigger and attempting to frighten his friends clearly was intentional, but the insured's injury was deemed accidental within the meaning of the special accident insurance policy because the insured never intended to cause a fatal injury even though the shot flowed from an intentional act. Accordingly, the Court held the injury was covered by the policy in which the insurer had agreed to pay if the insured should meet his death by accidental means.
Justice Thomas argued that the injury should be excluded from coverage on the ground that the injury was the foreseeable consequence of a "dangerous, foolhardy act, and although the result was not intended, the means were deliberate as distinguished from accidental." 97 So.2d at 7 (Thomas, J., dissenting in part). The Court, however, expressly rejected that view. Justice Drew, writing for the Court on this issue, said the
doctrine of foreseeability is a doctrine totally unsuited and unadaptable in construing accident policies. Moreover, the rationale of these cases seems to be founded not only in the doctrine of foreseeability but intrinsically in negligence on the part of the insured. Were we to make this principle a part of the law of this State, it would not only do violence to the reason for buying accident insurance but if it did not preclude recovery in a great majority of deaths arising from accidents, it would place an almost insurmountable burden on the insured to enforce the liability.

*471 The principle of the law is firmly imbedded in the jurisprudence of this State that contracts of insurance should be construed most favorably to the insured. To draw such a fine distinction between the words "accident" and "accidental means" would do violence to this principle. It is a classic example of a distinction without a difference. As a practical matter, the average person buying accident insurance policies assumes that he is covered for any fortuitous and undesigned injury. The average man has no conception of the judicial niceties of the problem and even the most learned judge or lawyer, in attempting to understand and comprehend the niceties of the distinction, is left in a state of bewilderment and confusion.
97 So.2d at 9-10 (Drew, J., for the majority in part).
District courts generally have followed the rationale expressed in Nash. In Cloud v. Shelby Mutual Insurance Co., 248 So.2d 217 (Fla. 3d DCA 1971), the insured, Cloud, pushed out of his way a car that had been blocking him in a driveway, but in so doing, he overrode the bumper of the other car and injured its passenger. The passenger sued Cloud, but Cloud's insurer, Shelby Mutual, refused to defend under the clause in its policy excluding coverage for injuries "`caused intentionally by or at the direction of the insured.'" Id. at 218 (quoting insurance policy). Cloud then sued Shelby Mutual for breach of the insurance contract, and the trial court granted summary judgment for the insurer. On appeal, the district court reversed because even though the parties agreed that Cloud intentionally pushed the other car, a dispute of fact existed regarding whether he intentionally caused the passenger's injuries.
The court in Cloud stated that the "reasonably foreseeable" test of causation so familiar in tort law had not been applied in cases dealing with accident insurance, and it adopted the following rule, which it determined to be the majority rule in the United States:
"The courts have generally held that injury or damage is caused intentionally within the meaning of an intentional injury exclusion clause if the insured has acted with the specific intent to cause harm to a third party, with the result that the insurer will not be relieved of its obligations under a liability policy containing such an exclusion unless the insured has acted with such specific intent."
Id. at 218 (quoting 44 Am.Jur.2d Insurance § 1411 at 259).
Nash and Cloud were later followed in Phoenix Insurance Co. v. Helton, 298 So.2d 177 (Fla. 1st DCA 1974), cert. discharged, 330 So.2d 724 (Fla. 1976). There, the insured drove his car to the edge of a crowd in an apparent attempt to extricate his wife from a melee at the center of the crowd. In the course of driving the car, the insured struck Helton, who sued for damages. Phoenix asserted that it had no duty to pay under the policy, which had an exclusion for injuries "`caused intentionally by or at the direction of the insured.'" Id. at 178. The district court disagreed and held that the injury was not caused intentionally within the meaning of the intentional injury exclusion clause. The court further held that had the evidence shown that the insured drove "into the crowd," the exclusion still would not apply because the injury was not caused intentionally even if the act of driving was intentional. Id. at 180-81.
Landis in no way changed the law set forth above. Landis held that an intentional injury exclusion clause excluded coverage for injuries suffered by children who were sexually molested while under the care of the insureds. 546 So.2d at 1053. This Court unanimously rejected the insured's argument that coverage should not be excluded because the insured intended no harm, holding instead that harm always results from child sexual abuse such that any intent to molest necessarily carries with it an intent to harm. We approved the rationale of Judge Frank's dissent in Zordan v. Page, 500 So.2d 608, 613 (Fla. 2d DCA 1986) (Frank, J., dissenting), review denied, 508 So.2d 15 (Fla. 1987), in which he said "[i]t defies human response and sensitivity *472 to conclude that the inevitable product of the sexual molestation of a child is not intended." See also McCullough v. Central Fla. YMCA, 523 So.2d 1208 (Fla. 5th DCA 1988) ("an intentional act of child molestation of a criminal character is not an accident"), approved sub nom. Shearer v. Central Fla. YMCA, 546 So.2d 1050 (Fla. 1989). Our decision in Landis did not suggest that courts apply tort law causation principles of "reasonably foreseeable" or "natural and probable consequences" in construing the intentional injury clause in insurance contracts. Rather, we merely found that an intent to injure is inherent in the act of sexually abusing a child.
Similarly, Marshall did not change the law. Marshall held that an intentional injury exclusion clause excluded coverage for an act of self-defense where the insured intended to harm the attacker. There, the insured did not argue that his act to injure was unintentional. He argued that the injuries he intentionally inflicted should not be excluded because "public policy supports coverage." 554 So.2d at 505. The majority rejected this argument and held that the clear terms of the policy controlled. Because the insured's intent to injure was intentional, we held that the insured's actions were excluded from coverage. See also Aetna Casualty & Surety Co. v. Griss, 568 So.2d 903 (Fla. 1990) (following Marshall). Marshall was consistent with a line of cases in which courts have precluded coverage where an insured intentionally strikes an intended victim, by, for example, aiming a firearm at that person and pulling the trigger intending to wound that person. See, e.g., Clemmons v. American States Ins. Co., 412 So.2d 906 (Fla. 5th DCA), review denied, 419 So.2d 1196 (Fla. 1982).[6]
Neither Landis nor Marshall should be read to create a distinction between an "intentional act" and an "intentional injury" in interpreting the "intentional injury" exclusion clauses of insurance policies, and we decline to create such a distinction here. To do so would be to judicially rewrite an insured's policy to exclude coverage where the language of the policy does not. As we stated above, contracts of insurance must be construed by resorting to the plain language of the policies as freely bargained for by the parties. See, e.g., Marshall, 554 So.2d at 506. Courts are to give effect to the intent of the parties as expressed in the policy language, and if the policy is ambiguous, the ambiguity must be resolved liberally in favor of the insured and strictly against the insurer who prepared the policy. E.g., Butler; Nash; Poole.
In the instant case, Castellano purchased a policy containing a specific exclusionary clause excluding coverage for "bodily injury ... which is expected or intended by the insured." Coverage should be excluded only as specifically set forth in that clause. The clause does not exclude coverage for injuries caused by negligent or otherwise unintentional acts because such injuries would not be "expected or intended by the insured." As the district court said, "[t]he insurance policy does not have an exclusion for all damages that directly or indirectly arise from intentional, aggressive conduct. It only excludes coverage for `bodily injury expected or intended by the insured.'" Prudential II, 599 So.2d at 1317.
Our analysis is consistent with the district court's decision in State Auto Mutual Insurance Co. v. Scroggins, 529 So.2d 1194 (Fla. 5th DCA 1988). There, the court applied an insurance policy's intentional injury exclusion clause to preclude coverage when the insured intentionally pulled the chair out from under the injured party as he sat down, apparently intending to see *473 him fall. Some form of bodily injury must have been expected or intended to result under those circumstances, and "[t]he fact that an unintended serious injury resulted from the fall is irrelevant to the issue of coverage." Id. at 1195 (emphasis supplied).
For the reasons stated above, we agree with the Second District that if the finder of fact concludes that the gun was accidentally discharged, the intentional injury exclusion in Castellano's policy does not exclude coverage because the insured would not have expected or intended bodily injury to result. However, should the jury find that Castellano intentionally fired his gun at Swindal intending to injure him, the exclusion would apply.
Accordingly, we answer the certified question as rephrased in the negative and we approve the decision below. This cause is remanded for proceedings consistent with this opinion.
It is so ordered.
McDONALD, SHAW, GRIMES, KOGAN and HARDING, JJ., concur.
OVERTON, J., dissents.
NOTES
[1] We have jurisdiction pursuant to article V, section 3(b)(4), Florida Constitution.
[2] Apparently the civil action has been settled by stipulation of the parties, although there is no evidence of that in this record. Swindal v. Prudential Property & Casualty Ins. Co., 599 So.2d 1314, 1316 (Fla. 2d DCA 1992). The civil complaint also is not contained in this record, so this Court does not know whether Swindal charged Castellano with intentional or negligent tortious conduct.
[3] The record in this case includes Castellano's testimony at his criminal trial. Swindal has been unable to provide competent testimony since the incident.
[4] See § 44.201, Fla. Stat. (1987).
[5] The court noted that other bodily injuries may be directly or proximately caused by intentional assault with a deadly weapon, such as fright or a resulting heart attack. However, the injuries at issue here were those caused by the gunshot wound, which were not caused by the intentional act of putting someone in fear. Prudential II, 599 So.2d at 1318.
[6] Some cases involve acts in which the insured intended to injure one party but actually injured another. For example, in Spengler v. State Farm Fire & Casualty Co., 568 So.2d 1293 (Fla. 1st DCA 1990), review denied, 577 So.2d 1328 (Fla. 1991), the court found that an intentional injury exclusion did not preclude coverage for injuries caused by gunshots "where the insured's intent to harm is directed against a person mistakenly believed to be one other than the person who suffers harm because the insured negligently failed to identify the shadowy form in his doorway." 568 So.2d at 1297. We find such situations distinguishable from the facts in Marshall and the present case. We reserve comment on whether exclusion clauses like the one in this case were intended to apply in cases like Spengler.