830 So.2d 156 (2002)
Israel CABEZAS, an incompetent, by and through Ivelice Cabezas FERRER, his guardian, and Modesta Cabezas, his wife, Appellant,
v.
FLORIDA FARM BUREAU CASUALTY INSURANCE COMPANY, Bobby Helms, Judith Helms, and Jason Helms, Appellees.
No. 3D00-2944.
District Court of Appeal of Florida, Third District.
October 9, 2002.
Rehearing and Certification Denied November 14, 2002.
Ginsburg & Schwartz and Todd R. Schwartz, Miami; and Edward C. Ratiner for appellant.
Gaebe Murphy Mullen & Antonelli and David Kleinberg, Coral Gables, for appellees.
*157 Before SCHWARTZ, C.J.,[*] JORGENSON, SHEVIN, JJ.
PER CURIAM.
Israel Cabezas appeals the trial court's order of final summary judgment entered in favor of Florida Farm Bureau Casualty Company (Farm Bureau) determining that Farm Bureau had no duty to defend or indemnify Helms. We affirm.
Helms, an eighteen-year-old man, was driving his parents' car when he was involved in an automobile collision with Cabezas, a seventy-seven-year-old man. Following impact between the two automobiles, Cabezas continued driving and did not stop at the scene of the accident. Fearing that Cabezas was going to flee the scene, Helms pursued him for several blocks and forced him to the side of the road. Both men exited their vehicles and Helms went to the front of his parents' car to determine what damage had ensued. While examining his car, Helms heard someone behind him. He turned around and saw hands in the air. Believing he was going to get hit, Helms reacted quickly and punched Cabezas on the side of the head. As a result of the blow, Cabezas suffered permanent and incapacitating head injuries that have rendered him mentally incompetent. Helms was subsequently arrested by the Homestead Police Department and charged with aggravated battery.
Cabezas filed a complaint against Helms and his parents. In his complaint, Cabezas alleged four counts: (count one) false arrest and imprisonment; (count two) negligence:(a) negligently operating the vehicle so that it collided; and (b) negligently pursuing, arresting, detaining, restraining and/or imprisoning Cabezas and in further striking Cabezas, either as part of such arrest, detention, restraint or imprisonment or under the erroneous and hasty assumption that Cabezas was a street gang member or other assailant from the surrounding neighborhood threatening harm to Helms' person; (count III) vicarious liability against Helms' parents as owners of the vehicle; and (count four) loss of consortium.
Farm Bureau initially defended Helms and his parents pursuant to their homeowners insurance policy under a reservation of rights. Farm Bureau then filed this petition for declaratory relief and requested that the court find that Helms' acts did not fall within the coverage of the homeowner's policy. Farm Bureau moved for final summary judgment stating that there were three exclusions in its policy which precluded coverage: (1) the exclusion for bodily injury caused by an insured; (2) the exclusion for injury caused by a violation of penal law; and (3) the exclusion for bodily injury which arises out of ownership, maintenance, use, loading or unloading of motor vehicles. The trial court concluded that Helms' acts constituted an intentional tort and the injury was intended and therefore did not fall within the coverage of Farm Bureau's insurance policy. The trial court entered a summary judgment in favor of Farm Bureau finding that Farm Bureau had no duty to defend or indemnify Helms.[2]
Cabezas contends that the intentional acts exclusion does not apply as the complaint alleges that Helms negligently struck Cabezas and did not intend to injure him. Cabezas further alleges that there are general issues of material fact as to whether Helms knew the person he *158 struck was Cabezas and whether Helms intended to injure Cabezas within the meaning of the subject policy exclusion. First, we disagree with Cabezas' narrow reading of the complaint. Secondly, for the purpose of determining whether the intentional injury exclusion applies, we find it irrelevant whether or not Helms knew the person he intended to hit was Cabezas as opposed to someone else. What is relevant is whether Helms intended to hit the person behind him. The complaint alleges facts that show Helms' conduct was intentional rather than negligent.
If the allegations in a complaint when fairly read, allege facts which create potential coverage under the policy, the insurer must defend the lawsuit. Fun Spree Vacations, Inc. v. The Orion Ins. Co., 659 So.2d 419, 421 (Fla. 3d DCA 1995)(emphasis added). Here, however, Farm Bureau had no duty to defend or indemnify Helms because the allegations of the complaint when "fairly read" did not bring the case within coverage. The complaint alleges:
8. Helms struck Cabezas in the head either intentionally (albeit without intent to harm) as part of the arrest, detention, restraint and/or imprisonment, or upon the erroneous belief that Israel Cabezas was a potential assailant from the surrounding neighborhood preparing to attack Helms while his back was turned and he was surveying the damage to his vehicle.
(Emphasis added). Taking these facts at face value, there is no dispute that Helms either intentionally struck Cabezas ("albeit without intent to harm"), or intentionally struck Cabezas based upon an erroneous belief that he was an assailant. In either case, the intentional act falls within the exclusion of the homeowners policy.
The Farm Bureau homeowners policy, section II, Exclusions, provides that "medical payments to others do not apply to bodily injury or property damage ... which is expected or intended by the insured." A punch to the head by an insured is an act expected or intended by the insured to cause bodily injury. See Ladas v. Aetna Ins. Co., 416 So.2d 21, 22 (Fla. 3d DCA 1982)(intentional acts, such as assault and battery are excluded from coverage). The fact that Helms alleges that he did not know who he was going to hit when he threw the punch does not establish that the punch had no purpose to injure. "If the injury is not intended, why attempt an act so calculated to injure?" State Farm Fire and Cas. Co. v. Caldwell, 630 So.2d 668 (Fla. 4th DCA 1994). Even if such acts were deemed to be in self defense, which appears to be Helms' argument, such acts would still be excluded from coverage under the intentional acts exclusion. Id.; see also Aetna Cas. and Sur. Co. v. Griss, 568 So.2d 903, 904 (Fla.1990); State Farm Fire and Cas. Co. v. Marshall, 554 So.2d 504, 505 (Fla.1989).
Cabezas cites Prudential Prop. and Cas. Ins. Co. v. Swindal, 622 So.2d 467 (Fla. 1993) for support that the intentional injury exclusion does not apply where the insured intends to strike one person but hastily or otherwise mistakenly strikes another. This is not our reading of the Swindal case. In Swindal, the court found that a homeowners policy does not exclude coverage for bodily injuries sustained where, although, the insured committed an intentional act intending to cause fear, the bodily injuries may have been caused accidentally and were not expected or intended by the insured to result.
In Swindal, the insured and Swindal had an ongoing feud and one day Swindal drove through the insured's driveway with *159 a hammer in his hand. Believing that Swindal was holding a gun, the insured went to his own closet, retrieved his handgun and, meaning to frighten Swindal, gave chase. The insured caught up with Swindal and reached into Swindal's car to grab what he believed was a gun. In the struggle, the insured's gun discharged causing severe bodily injury to Swindal. The insured's policy excluded coverage for bodily injury ... which is expected or intended by the insured. The supreme court found that this clause does not exclude coverage for injuries that were caused by negligent or otherwise unintentional acts because the injuries would not be expected or intended by the insured. The supreme court further held that if the finder of fact concludes that the gun was accidentally discharged, the intentional injury exclusion in the insured's policy does not exclude coverage because the insured would not have expected or intended bodily injury to result. The distinction between the instant case and Swindal, is that the insured in Swindal did not intend to injure Swindal, where in this case, Helms intended to punch the person behind him. It was not an accident. "The courts have generally held that injury or damage is caused intentionally within the meaning of an intentional injury exclusion clause if the insured has acted with specific intent to cause harm to a third party...." Id. at 470. citing Cloud v. Shelby Mut. Insur. Co., 248 So.2d 217 (Fla. 3d DCA 1971)(emphasis added); see also State Auto Mut. Insur. Co. v. Scroggins, 529 So.2d 1194 (Fla. 5th DCA 1988)(where insured intentionally pulled the chair out from under the injured party as he sat down, some form of bodily injury must have been expected).
As primary support for his position that the policy exclusion does not preclude recovery, Cabezas cites Spengler v. State Farm Fire and Cas. Co., 568 So.2d 1293 (Fla. 1st DCA 1990). We are not bound by Spengler, but nevertheless find it to be distinguishable. In Spengler, the insured was awakened in the middle of the night by a sound coming from his bathroom. As he armed himself, he did not notice that his girlfriend was not in bed. Believing that the shadowy figure exiting his bathroom was a burglar,[3] he fired his weapon and mistakenly shot his girlfriend. The court found that an intentional injury exclusion did not preclude coverage for injuries where the insured's intent to harm was directed against a person he mistakenly believed to be one other than the person who suffered harm.
Although we recognize Cabezas' efforts to carefully craft a complaint to fit the Spengler factual scenario, the facts of the present case are simply not the same. Unlike the insured in Spengler, whose home had been previously burglarized, and who was at home and looking into total darkness in the middle of the night at the time he discharged his firearmHelms was at the scene of an accident he had just had with Cabezas, in broad daylight, at the time he struck Cabezas. Helms' claim that his general knowledge of gang activity in the City of Homestead motivated the "negligent" punching of Cabezas is not analogous to the Spengler scenario.[4]
We find the First District Court of Appeal's decision, Peters v. Trousclair, 431 So.2d 296 (Fla.App. 1st 1990), is more closely analogous to the facts of this case. In Peters, the husband, whose occupation required extended absences from home, *160 returned home to find his wife and two men lounging in his living room. The husband was unaware that one of the men, Peters, was his wife's cousin, who had begun residing at the home. Believing that Peters was his wife's lover, the husband burst into a jealous rage, grabbed Peters and repeatedly stabbed him, causing serious injury.[5] The trial court concluded that the husband's acts were intentional and that consequently there was no insurance coverage. The court found that although the husband was unaware at the time of the stabbing of the identity of Peters as his wife's cousin, the act was nonetheless intentional and directed toward the person of Peters.
The facts of the present case are virtually identical to those of Peters. Helms admitted that he intended to hit the person behind him, he simply claims that because he did not know it was Cabezas, his act was negligent rather than intentional. We reject this argument. In this case, Helms intended to hit whoever was behind him, whether he believed it was Cabezas, the seventy-seven-year-old man, or a gang member from that neighborhood. Because he had the intent to injure the person behind him, we conclude that the intentional injury exclusion precludes coverage.
Accordingly, we affirm the summary final judgment.
NOTES
[*] Chief Judge Schwartz did not hear oral argument.
[2] As the trial court's ruling was based only on this one exclusion, we will not address the other exclusions in Farm Bureau's policy.
[3] The insured had been burglarized before and the point of entry had been the bathroom.
[4] Because we believe the cases are factually distinguishable, we do not reach the issue of the legal correctness of Spengler.
[5] In actuality, the second man in the room was the wife's paramour.