943 So.2d 237 (2006)
Alina REYES, etc., et al., Appellants,
v.
STATE FARM FLORIDA INSURANCE COMPANY, Appellee.
No. 3D05-2382.
District Court of Appeal of Florida, Third District.
November 8, 2006.
Rehearing Denied December 7, 2006.
John G. Crabtree, Key Biscayne; Ver Ploeg & Lumpkin and Brenton Ver Ploeg, Miami; and W. Stephen Lorenzo, for appellants.
Hicks & Kneale and Richard A. Warren, Miami, for appellee.
Before WELLS, CORTIÑAS, and LAGOA, JJ.
CORTIÑAS, Judge.
Alina Reyes ("Reyes") appeals from the trial court's final summary judgment entered in favor of State Farm Florida Insurance Company ("State Farm"), finding that State Farm has no duty to defend or indemnify Emilio Plana ("Plana") as to Reyes' claims. We reverse.
In September 1999, Reyes' husband, Luis Ibarra ("Ibarra") rented an apartment from Plana. In August 2001, Ibarra notified Plana that he intended to stop renting the apartment as of September 2001. As a result, Plana and Ibarra agreed to meet at the apartment on October *238 1, 2001, so Ibarra could return the apartment keys and Plana could refund the security deposit.
On October 1, 2001, Plana arrived at the apartment with his fiancée and her son. Ibarra, his wife Reyes, and their son, arrived shortly thereafter. Plana and Ibarra began to argue about the return of the security deposit. Plana told Ibarra that he was keeping part of the security deposit to make repairs to the apartment.
Subsequently, Ibarra entered the bathroom. In his deposition, Plana testified that when Ibarra emerged from the bathroom he was carrying what looked like a tire iron. Plana stated that when Ibarra approached him with a metal pipe he pulled out a gun and fired three shots, all of which hit Ibarra. Plana repeatedly indicated that he did not intend to hit Ibarra. Rather, he claimed he intended to aim towards the wall and stop the impending attack. Notably, Plana's deposition statements were conflicting, sometimes suggesting that he intended to shoot Ibarra.
Conversely, in her deposition, Reyes testified that Ibarra at no time had any metal weapon in his hand. Reyes claimed that Ibarra entered the bathroom to remove the toilet but did not succeed, and that as he was peacefully leaving the apartment Plana suddenly shot him in the back.
Reyes, individually and as personal representative of the estate, filed a civil complaint against Plana. In her amended complaint,[1] Reyes brought a claim for wrongful death alleging that Plana either intentionally or negligently shot and killed Ibarra. Additionally, Reyes sued Plana for negligent infliction of emotional distress as a result of Plana shooting Ibarra in the presence of Reyes and her son.
Thereafter, State Farm, Plana's homeowners insurer, filed an action for declaratory relief on the issue of insurance coverage and moved for summary judgment. State Farm asserted that the policy did not provide coverage for injuries sustained by Ibarra because the incident was not an "occurrence" within the meaning of the policy, and Plana "intended or expected" that bodily injury would flow from his acts.
Plana's homeowners policy defines the term "occurrence" as "an accident" which results in bodily injury. Furthermore, the policy excludes from coverage bodily injury which is either "expected or intended by an insured," or injury to any person or property which is the result of "willful and malicious acts of an insured."
Relying on the deposition testimony of Reyes and Plana, the trial court entered summary judgment in favor of State Farm. Concluding that the shooting was not an accident and Ibarra's injuries were either expected or intended by Plana, the trial court found that State Farm did not owe Plana an obligation to defend or indemnify Reyes' claims.
Having reviewed the record below, we conclude that there remains a disputed question of fact as to whether Ibarra's injuries were an "occurrence" within the meaning of the policy. In support of its position, State Farm relies on Landis v. Allstate Insurance Co., 546 So.2d 1051 (Fla.1989). In Landis, the Florida Supreme Court held that an intentional injury exclusion clause excluded coverage for injuries suffered by children who were sexually molested by an insured. The court unanimously rejected the insured's argument that coverage should not be excluded because the insured did not intend harm, *239 rather the court found that the intent to injure is inherent in the act of sexually abusing a child as a matter of law. Id.
This statement in Landis caused some confusion, and subsequently in Prudential Property and Casualty Insurance Co. v. Swindal, 622 So.2d 467 (Fla.1993), the court made clear that Landis should not be read to change the existing law. "Florida law has long recognized the general rule that tort law principles do not control judicial construction of insurance contracts." Travelers Indem. Co. v. PCR Inc., 889 So.2d 779, 787 (Fla.2004) (explicitly rejecting the importation of "the tort law principle of `natural and foreseeable consequences' into the context of an insurance policy").
For example, in Castro v. Allstate Insurance Co., 724 So.2d 133, 134 (Fla. 3d DCA 1998), we reversed a summary judgment for an insurer where it could not be said that the insured "expected or intended to cause bodily injury" to the victim. Id. at 134. In Castro, we rejected the insurer's claim that injury to the victim's ear canal as a result of the victim quickly turning his head in response to the insured's effort to tickle the victim with a radio antenna was not an "occurrence" within the meaning of the policy. See id. After reviewing the record, we concluded that the insurance policy's exclusion clause did not apply because the evidence showed that the insured intended to touch the victim, but did not actually intend any harm. Id.
Most recently, in PCR, the Florida Supreme Court explained that the term "accident" includes not only damages resulting from unintentional acts, but also includes damages resulting from intentional acts so long as the insured neither intended nor expected the resulting damages. PCR, 889 So.2d at 788-89. Moreover, PCR rejected the tort law principle of "substantial certainty" of injury to equate with intent for purposes of construing language in an insurance policy.[2]Id. The court held that nothing in the employer's insurance policy suggested that the "by accident" coverage clause should be construed so narrowly as to exclude an employee's injuries that the employer should have known would flow from its acts. Id.
State Farm also erroneously relies on cases where courts have inferred intent because the insured actually intended to cause some degree of bodily harm but miscalculated either the degree of injury or the identity of the victim. See, e.g., Cabezas ex. rel. Ferrer v. Fla. Farm Bureau Cas. Ins. Co., 830 So.2d 156 (Fla. 3d DCA 2002); Aetna Cas. & Sur. Co. v. Miller, 550 So.2d 29 (Fla. 3d DCA 1989); State Farm Fire & Cas. Co. v. Caldwell, 630 So.2d 668 (Fla. 4th DCA 1994); State Auto Mut. Ins. Co. v. Scroggins, 529 So.2d 1194 (Fla. 5th DCA 1988). In Miller, a physician became angry with a colleague and grabbed the stethoscope his colleague was wearing around her neck and pulled it causing her to suffer a herniated cervical disk. Miller, 550 So.2d at 30. We found that although the injury was more severe than expected, the insured intended to cause some degree of bodily harm. Id. Similarly, in Cabezas, we affirmed a summary judgment motion in favor of an insurer because the insured admitted that he intended to hit the person behind him on the mistaken belief that he was an *240 assailant. Cabezas, 830 So.2d at 158; see also, State Farm Fire & Cas. Co. v. Marshall, 554 So.2d 504 (Fla.1989)(holding that liability coverage was precluded for an act of self-defense because the insured admitted he intended to harm the attacker).
In the instant case, Plana purchased an insurance policy that contained a specific exclusionary clause precluding coverage for "bodily injury . . . which is intended or expected by the insured." Plana's policy did not contain a provision that excluded all injuries that directly or indirectly flow from his intentional acts. Instead, bodily injury that results from Plana's conduct was excluded only if he either "expected or intended" to cause such injury.
Here, the question of whether Ibarra's injuries were "intended or expected" by Plana when he fired the gun is a question of fact. If the trier of fact concludes that Plana fired the gun intending or expecting to injure Ibarra, the intentional injury exclusion would apply. Conversely, if the trier of fact finds that Plana did not intend or expect to injure Ibarra when he fired the gun, Plana's policy would not preclude coverage and State Farm would be obligated to defend or indemnify Plana as to Reyes' claims. See Swindal, 622 So.2d at 470-73. Accordingly, we reverse the judgment under review, vacate the related award of costs, and remand for further proceedings consistent with this opinion.
Reversed and remanded.
NOTES
[1] The estate moved to amend the complaint in the underlying tort action to allege negligence on November 9, 2004.
[2] The court adopted the objective substantial-certainty test to decide the underlying tort suits in Turner v. PCR, 754 So.2d 683 (Fla.2000)(holding that an injured employee could satisfy the intentional-tort exception of the Workers' Compensation Law either by demonstrating that his employer actually intended to injure him or engaged in conduct that was substantially certain to result in injury).