[DO NOT PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT
_____

No. 20-11524
Non-Argument Calendar
_____

D.C. Docket No. 2:18-cv-00779-TJC-NPM

CMR CONSTRUCTION AND ROOFING, LLC,
A/A/O The Orchards Condominium Association, Inc.,

Plaintiff-Appellee,

versus

EMPIRE INDEMNITY INSURANCE COMPANY,

Defendant-Appellant.

_____

Appeal from the United States District Court
for the Middle District of Florida
_____

(January 26, 2021)

Before JORDAN, BRASHER, and ED CARNES, Circuit Judges.

PER CURIAM:

This case involves a commercial property insurance dispute between Empire Indemnity Insurance Company, the insurer, and CMR Construction and Roofing, LLC, who has been assigned the rights of the insured, The Orchards Condominium Association, Inc. CMR sued Empire for breach of contract, and later moved to compel appraisal and stay litigation. The district court denied that motion, and after discovery it granted summary judgment to Empire. CMR appeals both of those orders.

I.

The Orchards, a condominium association in Naples, Florida, had an insurance policy issued by Empire when Hurricane Irma caused damage to 31 of its buildings. The policy lets the insured choose to receive one of two types of payment, or both. It can choose to receive the actual cash value, which is the replacement cost minus depreciation; or it can choose the replacement cost value, which is the replacement cost without the deduction for depreciation; or it can make a claim based on both the actual cash value and the replacement cost value if it notifies Empire of its intent to do so within 180 days of the property damage. The policy provides that Empire will not pay the replacement cost value, however: "(1) Until the lost or damaged property is actually repaired or replaced; and (2) Unless the repairs or replacements are made as soon as reasonably possible after the loss or damage."

2

After Hurricane Irma, The Orchards reported to Empire that its buildings had been damaged.  Empire inspected the property and, based on its estimate of the repair cost and factoring in the deductible and depreciation, it paid The Orchards $96,763.53.  It is not clear from the record or the parties' arguments why Empire issued this payment, whether it was meant to be for the actual cash value, or whether it was obligated to make this payment at all.

After Empire issued that payment, The Orchards assigned its rights to CMR, which was the company that would make the repairs.  Then, about five months after Empire's payment to The Orchards, CMR sent Empire an estimate for the replacement cost value, which CMR said was $4,953,000.00.  CMR had not completed any repairs.  Empire did not pay the amount in CMR's estimate but sent CMR its own estimate and invited questions for its expert's consideration.

CMR did not respond to that or demand an appraisal; instead, it filed this lawsuit.[1]  Its complaint alleges one breach of contract count, stating that Empire breached because it "underestimated the costs necessary to make all repairs" and it "failed to acknowledge coverage for all covered damages sustained."  Discovery revealed that CMR is requesting only replacement cost value and not actual cash value.  In fact, CMR says it has not even calculated the actual cash value.

---

[1] CMR filed the lawsuit in state court, and Empire removed it to federal court based on diversity jurisdiction.

After several months of litigation, CMR moved to stay litigation and compel appraisal, which is a process where the loss amount is appraised by third parties. The district court denied the motion, finding that CMR had waived its right to appraisal by acting inconsistently with that right. CMR had acted inconsistently, the court ruled, because it had, among other things, extensively litigated in state court, participated in case management without raising the appraisal issue, sought to benefit from discovery, and otherwise engaged in litigation for seven months before invoking appraisal.

After discovery, the district court granted Empire's motion for summary judgment. It found that Empire had not breached because CMR sought only replacement cost value yet had not completed any repairs, which under the plain language of the policy was a requirement to receive replacement cost value. The court also concluded CMR could not show that Empire breached a duty to pay actual cash value because CMR did not seek actual cash value and it could not "at this stage shift from claiming [replacement cost value] to claiming [actual cash value]." It summarized: "Empire did not breach the policy in failing to pay the [replacement cost value] because CMR did not undertake any repairs to which that policy provision applied. Nor did Empire breach the policy in failing to pay [actual cash value] because CMR never requested payment for [actual cash value]."

4

II.

CMR contends that the district court erred in granting summary judgment to Empire. It argues that Empire breached the insurance policy and that the breach obligated Empire to pay the full estimated replacement cost value even though CMR has not completed any repairs. CMR's argument about how, exactly, Empire breached is anything but clear. What is clear is that Empire did not breach and that the district court did not err.

"We review a district court's granting summary judgment de novo, consider all facts and reasonable inferences in favor of the nonmoving party, and apply the same legal standards used by the district court." Galindo v. ARI Mut. Ins. Co., 203 F.3d 771, 774 (11th Cir. 2000). We must interpret the terms of insurance policies "in accordance with the plain language of the policies as bargained for by the parties." Prudential Prop. & Cas. Ins. Co. v. Swindal, 622 So. 2d 467, 470 (Fla. 1993). When "a policy provision is clear and unambiguous, it should be enforced according to its terms" and we "may not rewrite" it. Taurus Holdings, Inc. v. U.S. Fidelity & Guar. Co., 913 So. 2d 528, 532 (Fla. 2005) (quotation marks omitted).

The insurance policy provides that a claim for replacement cost value will not be paid "[u]ntil the lost or damaged property is actually repaired or replaced" and "[u]nless the repairs or replacement are made as soon as reasonably possible after the loss or damage." That "until and unless" provision is plain and

5

unambiguous.  It means that Empire was not obligated to pay CMR the replacement cost value until CMR had actually made the repairs and incurred the costs of doing so.  See Ceballo v. Citizens Prop. Ins. Corp., 967 So. 2d 811, 815 (Fla. 2007) ("[C]ourts have almost uniformly held that an insurance company's liability for replacement cost does not arise until the repair or replacement has been completed.") (quoting State Farm Fire & Cas. Co. v. Patrick, 647 So. 2d 983 (Fla. 3d DCA 1994)).

Empire could not have breached the insurance policy based on the replacement cost value because the "until and unless" provision had not been satisfied.  CMR's interrogatory answers state that it has made only temporary repairs, not that it has completed the repairs to all of the damage caused by Hurricane Irma.  Empire could not have breached by not paying CMR's estimated replacement cost value because CMR had not made any repairs covered by the policy; and certainly not the millions of dollars' worth that CMR's estimate lists and that CMR seeks in this lawsuit.

Nor could Empire have breached the insurance policy based on the actual cash value because CMR did not and does not seek actual cash value.  In response to an interrogatory asking it to specify whether it is claiming that it is owed money based on actual cash value or replacement cost value, CMR answered: "[CMR] is claiming Replacement Cost Value . . . [CMR] is not claiming Actual Cash Value

6

for the property and has not calculated that." As the district court correctly found: "CMR never requested payment for [actual cash value]." (Emphasis added.)

Despite all of that, CMR identifies as the source of Empire's breach Empire's $96,763.53 payment, which CMR says was based on an insufficient estimate of repair costs. As we've noted, the record does not show exactly what that payment was for. But even assuming CMR is right that the payment of that amount was based on an insufficient estimate of repair costs, it does not invalidate the "until and unless" provision. CMR insists that it is seeking the replacement cost value, which requires completion of the repairs before Empire must pay under the policy. There is no reason to think that if CMR had actually repaired the damaged property, as the policy requires, Empire would have denied coverage for the cost of the completed repairs.

We cannot rewrite the plain terms of the insurance policy. See Taurus Holdings, 913 So. 2d at 532. The district court did not err in granting summary judgment to Empire.

## III.

CMR also contends that the district court erred in denying its motion to compel appraisal and stay litigation. We review de novo the waiver of the right to appraisal when the facts are undisputed. See Fla. Ins. Guar. v. Rodriguez, 153 So. 3d 301, 303 (Fla. 5th DCA 2014). Appraisal is a form of alternative dispute

7

resolution that sets a disputed loss amount.  See State Farm Fla. Ins. Co. v. Crispin, 290 So. 3d 150, 151 (Fla. 5th DCA 2020).  A party may be held to have waived its right to appraisal if it has "actively participate[d] in a lawsuit or engage[d] in conduct inconsistent with the right."  Rodriguez, 153 So. 3d at 303.

As the district court correctly pointed out, CMR did act inconsistently with the right to appraisal, and thereby waived it.  CMR waited several months before filing this lawsuit and did not invoke the right to appraisal during that time, even though it had an estimate of repair costs that was different from the estimate Empire had.  And after CMR filed this lawsuit, which included a demand for a jury trial, it waited several more months to assert a right to appraisal.  Before invoking appraisal, CMR engaged in discovery in state court by serving Empire with interrogatories and a request for production.  And in the district court it participated in case management and scheduling without raising the issue of appraisal.  The "Case Management Report" that counsel for CMR signed has a section labeled "Other Alternative Dispute Resolution" and leaves a blank in which to list whether "[t]he parties intend to pursue the following other methods of alternative dispute resolution."  That blank was filled in: "None at this time."

The district court did not err in denying CMR's motion to compel appraisal and stay litigation.

**AFFIRMED.**