599 So.2d 1314 (1992)
Larry S. SWINDAL and Nicholas Castellano, Appellants,
v.
PRUDENTIAL PROPERTY AND CASUALTY INSURANCE COMPANY, Appellee.
No. 91-01219.
District Court of Appeal of Florida, Second District.
April 10, 1992.
Rehearing Denied July 2, 1992.
*1315 W.C. Airth, Jr. of Williams & Airth, P.A., Orlando, for appellant Larry S. Swindal.
Raymond T. Elligett, Jr. of Schropp, Buell & Elligett, P.A., Tampa, for appellee.
ALTENBERND, Judge.
Larry S. Swindal and Nicholas Castellano appeal a final summary judgment in favor of Prudential Property and Casualty Insurance Company in Prudential's action for declaratory judgment.[1] Prudential issued Mr. Castellano's homeowners insurance policy. Mr. Castellano shot Mr. Swindal during an argument. The summary judgment determined that Mr. Swindal's injuries were not covered by Prudential because the homeowners policy excluded coverage for bodily injuries expected or intended by the insured. After considerable collective difficulty in discerning the correct outcome, we reverse because there is a disputed question of fact whether Mr. Castellano fired the gun intentionally or by accident. Thus, we conclude there is a disputed issue of fact whether Mr. Castellano expected or intended to cause bodily injury to Mr. Swindal during this argument. As we stated during the last visit of this case to this court, the fact finder must determine whether "the injury was caused by a negligent or an intentional act." Prudential Property & Casualty Ins. Co. v. *1316 Castellano, 571 So.2d 598, 599 (Fla. 2d DCA 1990). See Perez v. Otero, 348 So.2d 564 (Fla. 3d DCA 1977). Because we are not certain that our interpretation of Landis v. Allstate Ins. Co., 546 So.2d 1051 (Fla. 1989), and State Farm Fire & Casualty Co. v. Marshall, 554 So.2d 504 (Fla. 1989), is correct and this opinion could impact on standard language in virtually every homeowners insurance policy in Florida, we certify a question to the supreme court.
In early 1983, these two men engaged in an ongoing feud, apparently because Mr. Castellano's wife had been married to Mr. Swindal. In July 1983, Mr. Swindal allegedly threatened Mr. Castellano with a shotgun and held him at gunpoint for 45 minutes. In an effort to resolve their differences, the two participated in citizen's dispute settlement mediation on August 15, 1983.[2] After the meeting, Mr. Swindal drove through the Castellanos' driveway at high speed. Mr. Castellano thought he saw a gun in Mr. Swindal's hand. Actually, it was a hammer.
Mr. Castellano obtained his handgun from his closet. He left his home, got in his car, and proceeded to chase Mr. Swindal. He admits that he intended to frighten Mr. Swindal. Mr. Castellano then exited his car and approached Mr. Swindal's car with the loaded gun, safety off, and finger on the trigger. Mr. Castellano reached inside Mr. Swindal's car to grab what he thought was a gun. Mr. Swindal grabbed for Mr. Castellano's gun, which fired. Mr. Castellano admits that his finger was on the trigger, but denies that he fired the gun on purpose. He maintains that the gun accidentally discharged during the brief struggle.[3] Mr. Swindal sustained serious injuries.
In addition to this lawsuit, the incident resulted in two other legal proceedings. The record in this appeal contains limited information concerning the other two cases. First, the state charged Mr. Castellano with a criminal offense arising out of the incident. He was tried by a jury and found not guilty. Second, Mr. Swindal filed a civil action against Mr. Castellano. We have no information concerning the allegations in that complaint. Thus, we do not know whether the complaint alleged an intentional tort or an act of negligence or both. Apparently, the civil case was settled, but the record does not disclose the terms of the settlement.
The homeowners insurance policy involved in this case is entitled "The Prudential Homeowners Three" and appears comparable to the standard form supplied by the Insurance Services Office as HO-3. Section II, Coverage E, of the policy provides liability coverage under a comprehensive insuring agreement.[4] The coverage is limited by an exclusion which provides that Coverage E does "not apply to bodily injury or property damage: a. which is expected or intended by the insured."
The trial court decided that Mr. Castellano's admitted conduct, at a minimum, constituted an intentional assault. Thus, it concluded that the insured intended to frighten his victim and that fright was a legal harm. As a matter of law and undisputed fact, it held that Mr. Castellano intended some harm to Mr. Swindal. That the nature and extent of the actual harm was far greater than that allegedly intended by the insured was not relevant to the trial court. The trial court was "troubled" by the fact that any other ruling might permit coverage for an illegal act or for the consequences of intentional, aggressive conduct.
*1317 We share the trial court's concern that insurance coverage should not, as a matter of general public policy, protect an insured from the "known and necessary consequences" of his own criminal conduct. Everglades Marina, Inc. v. American Eastern Dev. Corp., 374 So.2d 517 (Fla. 1979). On the other hand, Mr. Castellano was found not guilty in the criminal proceeding. See generally Annotation, Criminal Conviction as Rendering Conduct for which Insured Convicted within Provision of Liability Insurance Policy Expressly Excluding Coverage for Damage or Injury Intended or Expected by Insured, 35 A.L.R. 4th 1063 (1985). The insurance policy does not have an exclusion for all damages that directly or indirectly arise from intentional, aggressive conduct. It only excludes coverage for "bodily injury expected or intended by the insured." If Mr. Swindal's injuries were caused by a negligent discharge of the firearm, the public policy that denies insurance coverage for the known and necessary consequences of criminal acts is not invoked. Instead, the invoked public policies are those that encourage compensation for victims of negligence and promote the costspreading of identified risks among a relevant segment of the population.[5]
The trial court concluded that the supreme court in Landis and Marshall expanded the intentional injury exclusion and empowered the trial judge to exclude coverage for damages that may "inevitably flow" from an intentional act, even though the injuries are proximately caused by a separate negligent act. In Landis, the supreme court referred to harm that "inevitably flows" from an intentional act and stated that "specific intent to commit harm is not required by the intentional acts exclusion. Rather, all intentional acts are properly excluded by the express language of the homeowners policy." 546 So.2d at 1053. Thus, it is not unreasonable to conclude that Landis effectively changed the intentional injury exclusion into a broader intentional acts exclusion. We are uncertain whether this was the supreme court's intent. This panel has been unable to agree whether the "inevitably flowed" test of foreseeability of injuries, if that is the test of Landis, is more or less restrictive than established concepts of substantial certainty and proximate causation.[6]
As a general principle, where a reasonable person would believe that a particular result is substantially certain to follow, the person will be treated as if the *1318 result was intended. See W.L. Prosser, Handbook of the Law of Torts 32 (4th ed. 1971) The evidence in this case could readily support a finding that the shooting was substantially certain, not merely foreseeable. We conclude, however, that Landis does not authorize a trial judge to make this finding prior to trial if a question of fact exists. Snyder v. Cheezem Dev. Corp., 373 So.2d 719, 720 (Fla. 2d DCA 1979).
We conclude that this standard insurance exclusion, which must be construed in favor of coverage, does not exclude coverage for bodily injuries unless, at a minimum, the injuries are the direct and proximate result of an intentional act.[7] If the damages are caused by a separate act of negligence, even if it occurs in the same general time frame as some intentional act, the damages are not excluded if they are the result of an unexpected or unintended negligent act and are not the result of an intentional act.
This case demonstrates that the occurrence of an intentional act does not necessarily mean that the insurance coverage excludes all injuries arising during the period when that intentional act takes place. In this case, the only undisputed intentional act is assault or assault with a deadly weapon. Fright may well be an excluded injury that is proximately related to the act of assault. Quite arguably, a resulting heart attack would also be related. But the injury in this case is a massive physical injury to the victim's head. This injury is not the result of fright. It was caused either by an intentional battery with a deadly weapon or by a negligent discharge of the weapon. Thus, there is an unresolved dispute of fact as to whether the damaging act is intentional or negligent.
We distinguish cases in which the insured intentionally fired a gun and thereafter maintained that the bullet wounds were not injuries connected to the shooting. Compare Draffen v. Allstate Ins. Co., 407 So.2d 1063 (Fla. 2d DCA 1981) (excluding coverage for injuries incurred when insured "met his mark" four out of six times, firing gun at his pursuers) with Spengler v. State Farm Fire & Casualty Co., 568 So.2d 1293 (Fla. 1st DCA 1990) (intentional harm exclusion did not apply where insured's intent to harm was not directed against person actually suffering harm), review denied, 577 So.2d 1328 (Fla. 1991). The injuries caused by an intentional discharge of a gun are far more likely to be excluded from insurance coverage than are *1319 those caused by an accidental discharge.[8] Likewise, Marshall is arguably distinguishable because the jury expressly rejected the theory of negligent discharge and found that the insured had committed an intentional battery that was not a reasonable use of force. 554 So.2d at 505.
We certify the following question as a matter of great public importance:
DOES THE "INTENTIONAL ACT" EXCLUSION IN A TYPICAL HOMEOWNERS INSURANCE POLICY EXCLUDE COVERAGE FOR INJURIES ARISING OUT OF AN INCIDENT INVOLVING AN INTENTIONAL TORT IF THE INJURIES "INEVITABLY FLOW" FROM THE INSURED'S INTENTIONAL ACT, BUT ARE "PROXIMATELY CAUSED" BY A NEGLIGENT ACT?
Reversed and remanded.
LEHAN, A.C.J., and THREADGILL, J. concur.
NOTES
[1] This case first came before this court on Prudential's appeal from an order dismissing its action for declaratory judgment to determine the parties' rights under Mr. Castellano's homeowners policy. The trial court had dismissed the action for lack of jurisdiction, and we reversed and remanded for further proceedings. Prudential Property & Casualty Ins. Co. v. Castellano, 571 So.2d 598 (Fla. 2d DCA 1990).
[2] § 44.201, Fla. Stat. (1987).
[3] We note that the version of the incident described in this opinion is based primarily upon the testimony of Mr. Castellano. Apparently, Mr. Swindal is not able to provide competent testimony concerning this incident. Obviously, a jury could question the accuracy of Mr. Castellano's testimony.
[4] The policy's insuring agreement states:

If a claim is made or suit is brought against any insured for damages because of bodily injury or property damage to which this coverage applies, we will:
a. pay up to our limit of liability for the damages for which the insured is legally liable;
[5] Insurance companies regularly charge a higher premium to insure a home that has a pool or some other special risk. When they underwrite such a risk, they have a monetary incentive to encourage and promote safety concerning the risk. Guns in homes are clearly a special risk. Many children and adults are injured or killed in incidents involving guns. Those incidents are frequently filled with emotion and occur under circumstances that render the conduct less than criminal. No public policy prohibits insurance companies from charging a higher premium for homes with guns and spreading the cost of these unfortunate occurrences among the households that choose to have guns. Such coverage provides the insurance companies with a monetary incentive to promote gun safety. It is quite likely that more lives are saved by gun safety education than by the deterrence of a broad insurance exclusion that is unknown to many homeowners.
[6] The First District, employing that language from Landis, has indicated that the exclusion only precludes coverage for injuries that "inevitably flow" from the insured's intentional acts. Spengler v. State Farm Fire & Casualty Co., 568 So.2d 1293 (Fla. 1st DCA 1990), review denied, 577 So.2d 1328 (Fla. 1991). This analysis seems consistent with Judge Frank's dissenting opinion in Zordan v. Page, 500 So.2d 608, 614 (Fla. 2d DCA 1986). As we discuss in the body of this opinion, whether the "inevitably flows" test is the same as "proximate causation" is questionable. The injury in Spengler almost certainly was proximately caused by an intentional act that was accidentally directed at an unintended victim. In our case, the victim is the intended victim, but the injuries may have been proximately caused by an unintended, accidental act. In this context, we choose to employ "proximate causation," a well-defined concept of tort law, rather than create a new concept that could require a greater or lesser connection between the insured's act and the injury. We are inclined to believe, from the "inevitably flows" language, that Landis intended merely to hold that sexual battery, as a matter of law, always results in intentional injury. We recognize, however, that if the supreme court intended to permit insurance companies to exclude coverage on a different standard of causation, the trial court may have had authority to reach the result it reached.
[7] In a recent case, the New York Court of Appeals held that harm was "inherent" in the act of sexually abusing a child. Allstate Ins. Co. v. Mugavero, 79 N.Y.2d 153, 581 N.Y.S.2d 142, 589 N.E.2d 365 (1992). As a result, it excluded coverage for acts of child sexual abuse under an exclusion for bodily injury "intentionally caused by an insured person." This result is comparable to the result in Landis, but the reasoning does not place the same emphasis upon the existence of an intentional act. The court states:

Clearly, more than a causal connection between the intentional act and the resultant harm is required to prove that the harm was intended. Allstate acknowledges this but counters that in the exceptional case of an act of child molestation, cause and effect cannot be separated; that to do the act is necessarily to do the harm which is its consequence; and that since unquestionably the act is intended, so also is the harm. We think the argument finds support in logic and in the generally accepted conception of harm as being inherent in the act of sexually abusing a child.
By requiring more than a causal connection between the intentional act and the resultant harm, the New York court is creating a test more favorable to the insured and the victim than the test we apply in this case. In light of the language in Landis that "all intentional acts are properly excluded by the express language of the homeowners policy," we do not believe that we can require more than proximate causation between the intentional act and the resultant harm.
On the other hand, the New York court adopted its test because it believed "that the ordinary person would be startled, to say the least, by the notion that [the insured] should receive insurance protection for sexually molesting these children, and thus, in effect, be permitted to transfer the responsibility for his deeds onto the shoulders of other homeowners in the form of higher premiums."
After chasing his victim down the street and pointing a loaded handgun at his victim's head at point blank range, the ordinary person might also be startled to discover that insurance premiums paid for the resulting injuries that "inevitably flowed" from this intentional altercation.
[8] It should be noted that other jurisdictions have not excluded coverage for an accidental discharge of a firearm under circumstances similar to this case. Annotation, Construction and Application of Provision of Liability Insurance Policy Expressly Excluding Injuries Intended or Expected by Insured, 31 A.L.R. 4th 957, § 7(b) (1984); Celina Mut. Ins. Co. v. Forister, 438 N.E.2d 1007 (Ind. App. 1982); Farmers & Merchants Ins. Co. v. Cologna, 736 S.W.2d 559 (Mo. App. 1987); State Farm Fire & Casualty Co. v. Shelton, 176 Ill. App.3d 858, 126 Ill.Dec. 286, 531 N.E.2d 913 (1988), appeal denied, 125 Ill.2d 574, 130 Ill.Dec. 489, 537 N.E.2d 818 (1989); Allstate Ins. Co. v. Lewis, 732 F. Supp. 1112 (D.Colo. 1990). See also 7A J. Appleman, Insurance Law and Practice § 4501.09 (Berdal ed. 1979).