DAVIS, Judge.
Prison Health Services, Inc. (PHS), appeals the final summary judgment requiring it to indemnify Lawrence W. Crow, Jr., Sheriff of Polk County (Sheriff), and the Florida Association of Counties Trust (FACT) for a settlement amount that the Sheriff and FACT paid to the estate of Michael Cullaton. Because genuine issues of material fact remain to be resolved, we reverse the final summary judgment and remand for further proceedings.
On April 17,1994, while an inmate at the Polk County Jail, Cullaton sustained serious head injuries during an incident involving several corrections officers. After being injured, Cullaton was taken to the nurses’ station at the jail, which was staffed by nurses employed by PHS, the provider of medical services at the jail. Not appreciating the extent of his injuries, the nurses kept Cullaton at the jail under observation until he lapsed into a coma. He was then transported to the hospital where he died several weeks later.
The investigation following the incident determined that the corrections officers had used excessive force and that certain officers had made false official reports concerning the event. Two of the officers were charged with and convicted of aggravated battery and making false official statements.
After Cullaton’s death, his estate notified the Sheriff and FACT, as the insurer of the Sheriff, of its intent to sue for the conduct of the Sheriffs employees and notified PHS of its intent to sue for medical malpractice. On November 15, 1994, before any lawsuit was filed, the estate agreed to settle with the Sheriff, FACT, and the four officers who were involved in the incident (including the two who were convicted of aggravated battery charges) for $1 million in return for the estate’s general release of all claims against the Sheriff, FACT, and the four officers, individually and personally. This release did not include PHS. Six days later, again before suit was filed, the estate settled with PHS, its employees, and its insurers for a lump sum of $300,000 and a structured payment plan yielding $3.6 million over time.
Pursuant to an indemnification provision contained in the Health Services Agreement (the Agreement) between PHS and the Sheriff, the Sheriff and FACT, as the subrogee of the Sheriff, separately demanded indemnification from PHS for the settlement paid to the Cullaton estate. The Sheriff claims to have paid $100,000 of the $1 million settlement. The Agreement, by which PHS contracted to provide medical services at the Polk County Jail, contained language requiring PHS to indemnify the Sheriff for claims resulting from the performance of work and services described in the Agreement.
PHS denied that the Cullaton estate claim against the Sheriff was covered by the indemnification clause and refused to pay the Sheriff and FACT. FACT filed suit against PHS to enforce the indemnification clause. When the Sheriffs separate claim against PHS was ultimately settled as part of the subsequent renegotiation of the Agreement, FACT moved for summary judgment against PHS on the basis of the indemnity clause. The trial court determined that the Cullaton claim against the Sheriff was covered by the Agreement and entered final judgment in favor of FACT. PHS challenges that final judgment.[1]
*1121 In order to find that PHS was obligated to indemnify the Sheriff and FACT, the trial court had to resolve two issues: (1) whether the claim was subject to indemnification as a matter of public policy; and (2) whether the claim was covered by the indemnification provision of the Agreement. The trial court specifically addressed only the second of these questions. However, the ruling impliedly found that the Cullaton estate’s claim against the Sheriff involved acts that are subject to indemnification as a matter of law.
We address the first question before turning to the trial court’s determination of the second issue. Whether the Cullaton estate’s claim is subject to indemnification as a matter of public policy depends on the nature of the claim. The Cullaton estate had potential claims based on both the intentional acts and the negligent acts of the Sheriff and the officers. Some of those claims include, but are not limited to, the intentional torts of the officers, the Sheriffs negligence in hiring and supervising the officers, the negligent provision of medical services, and the officers’ negligence in transporting Cullaton to PHS for treatment. There is no indication as to the specific nature of the estate’s claim as there was never a lawsuit filed.
If the Cullaton estate’s claim was based on the intentional act of one or more of the officers, we cannot determine whether the claim was subject to indemnification as a matter of law because we cannot determine from the record whether this particular employer, the Sheriff, may be held legally responsible for the intentional acts of his employees. While it is generally contrary to public policy to attempt by contract to avoid responsibility for one’s intentional acts, whether by insurance or by indemnification agreement, Swindal v. Prudential Prop. & Cas. Ins. Co., 599 So.2d 1314 (Fla. 2d DCA 1992), approved, 622 So.2d 467 (Fla.1993), in certain fact-specific circumstances, an employer may be held responsible for the intentional torts of its employees, see M.V. v. Gulf Ridge Council Boy Scouts of Am., Inc., 529 So.2d 1248 (Fla. 2d DCA 1988). However, because such a determination requires a complicated and fact-driven analysis that is not possible given the record before us, we decline to reach that issue. If, on the other hand, the claim was based on the negligence of the Sheriff or his officers, there would be no public policy prohibition to indemnification. Because the nature of the claim or claims is not apparent from the record, genuine issues of material fact remain and the entry of summary judgment was improper. Accordingly, we reverse the final summary judgment and remand for determination of the factual issues.
We now turn to the second question, which is whether the Cullaton estate’s claim, if it was subject to indemnification, was covered by the indemnification provision of the Agreement. In determining whether the Agreement required PHS to indemnify the Sheriff for the Cullaton settlement, the trial court interpreted the following language of the contract:
PHS assumes the entire responsibility for performance of all work and services and duties described in this Agreement. For specific valuable consideration and other benefits accruing to PHS, which have been received or acknowledged by PHS, and which are separate and apart *1122 from any and all other consideration for PHS to enter into this Agreement, PHS further expressly agrees to indemnify SHERIFF, his appointees, officers, agents, employees and Polk County, Florida, and agrees to hold them and shall hold all of them harmless from any and all claims or actions for personal injury, death or property damage and from any other losses, and all damages (including but not limited to: compensatory, consequential, and incidental) charges, or expenses, including reasonable attorney’s fees, which arise out of, in connection with or by reason of, the performance of all services, duties and responsibilities described pursuant to this Agreement or which are alleged to have arisen out of, in connection with, or by reason of, the performance of such services, duties and responsibilities. PHS further agrees to undertake at its own expense, the defense of any action which may be brought against the SHERIFF, his appointees, officers, agents, employees, and Polk County, Florida, claiming damages which are alleged to have arisen out of, by reason of, or in connection with, the performance of the services, duties and responsibilities of this Agreement.
Should a Court determine that the basis of a valid claim or action was totally due to the fault of the SHERIFF, then the SHERIFF agrees to indemnify, defend or reimburse PHS for its defense and shall hold harmless PHS, its agents, servants, employees and medical staff from any judgment awarded from such claim or action.
The trial court, citing Department of Transportation v. V.E. Whitehurst & Sons, Inc., 686 So.2d 101 (Fla. 1st DCA 1994), determined that this language required PHS to indemnify the Sheriff for all claims unless the Sheriff was found to be totally liable. Thus, the trial court entered summary judgment requiring PHS to indemnify FACT, as subrogee of the Sheriff.
However, once again, the trial court did not specify the nature of the claim or claims that the Sheriff and FACT were settling. Since the contract limits indemnification to those claims related to or arising out of the performance of the services and duties provided under the Agreement, the Agreement would not support indemnification of a claim for the tortious conduct of the individual officers or the hiring and supervising duties of the Sheriff. On the other hand, the Cullaton estate also had a potential claim for negligent provision of medical services, which would fall within the terms of the contract and would thus be included in the indemnification coverage. Because the nature of the claim that was being settled is a factual determination, genuine issues of material fact remain as to what type of claim was settled and whether that claim was covered by the Agreement. Accordingly, the entry of final summary judgment was improper and must be reversed.
Reversed and remanded.
SALCINES and KELLY, JJ., concur.

. The trial court originally entered the final judgment on Januaiy 29, 2002, and PHS *1121 timely filed its notice of appeal. However, it was later determined that the clerk of court had misplaced the final judgment, and on March 14, 2002, the trial court entered another final judgment "nunc pro tunc January 29, 2002.” PHS also filed a notice of appeal of the March 14, 2002, judgment. These two cases are consolidated on appeal.