[DO NOT PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT
_____

No. 09-12126
Non-Argument Calendar
_____

FILED
U.S. COURT OF APPEALS
ELEVENTH CIRCUIT
OCTOBER 19, 2009
THOMAS K. KAHN
CLERK

D. C. Docket No. 07-21283-CV-KAM

CENTURY SURETY COMPANY,

Plaintiff-Counter-
Defendant-Appellee,

versus

SEDUCTIONS, LLC,
doing business as Hotties,

Defendant,

MAURICIO JAVIER ARANA-LANDEROS,
BLANCA IRIS ARANA,

Defendants-Counter-
Claimants-Appellants.

_____

Appeal from the United States District Court
for the Southern District of Florida
_____

(October 19, 2009)

Before BIRCH, HULL and KRAVITCH, Circuit Judges.

PER CURIAM:

Mauricio Arana-Landeros and his wife, Blanca Arana, (collectively, "the Aranas") appeal the district court's entry of final summary judgment in favor of Century Surety Company ("Century") on its claim for a declaratory judgment against its insured, Seductions, LLC, and the Aranas. The Aranas argue that the district court erred in concluding that an insurance policy issued by Century covered only $25,000 of Seductions's liability for injuries Mauricio suffered as a patron at Seductions's adult nightclub. Following a brief recitation of the relevant facts, we affirm.

## I. BACKGROUND

Mauricio Arana was injured in 2006 when Seductions employees allegedly beat and threw him out of the company's nightclub after he refused to leave at closing time. The Aranas subsequently sued Seductions in state court to recover damages for Mauricio's injuries, medical expenses alleged to exceed $1 million, and loss of consortium. The Aranas' complaint alleged that Seductions had negligently hired, retained, trained, and supervised the employees responsible for the attack.

Seductions tendered defense of the lawsuit to Century, its insurer under a commercial general liability policy in effect at the time of Mauricio's injuries. The policy covered losses incurred by Seductions due to "bodily injury" arising from "operations necessary or incidental to" its nightclub. The policy also provided coverage for "personal and advertising injury," which was defined to include the "wrongful eviction from, wrongful entry into, or invasion of the right of private occupancy of a room, dwelling or premises that a person occupies, committed by or on behalf of its owner, landlord or lessor." The policy's declarations page established a $2 million "General Aggregate Limit," $1 million "Personal and Advertising Injury" and "Each Occurrence" limits, and a $2,000 per person "Medical Expense Limit" on coverage.

In addition, two endorsements to the policy, forms CGL 1704 and CGL 1717, limited coverage for losses arising from assault and battery. Through Century's inadvertence, however, CGL 1704, which explicitly excluded coverage for assault, battery, and any related negligence claims, was neither attached to the policy nor listed on the policy's schedule of forms and endorsements. Nevertheless, CGL 1717, entitled "Limited Coverage – Assault & Battery," was attached. CGL 1717 provided that "[t]he specific coverage excluded under CGL

1704 is reinstated on a limited basis" and purported to establish a $25,000 per occurrence sublimit for "covered loss arising from an assault and battery."

Because of Mauricio's allegations that he had been "attacked and beaten," Century offered $25,000 to settle the Aranas' claims against Seductions, in accordance with CGL 1717's sublimit on injuries arising from assault and battery. The Aranas rejected Century's offer and demanded a $2 million "policy limits" settlement in its place. Century then filed this action in federal court, seeking a declaration that its duty to indemnify Seductions on the Aranas' claims was limited to $25,000.[1]

The parties filed cross motions for summary judgment with the district court. The Aranas contended that the policy was ambiguous and should be construed in favor of Seductions, the insured, to provide coverage in the amount of $2 million. Specifically, they argued (1) that the policy did not limit coverage for assault and battery claims, (2) that Mauricio's injuries arose from Seductions's negligence rather than any assault or battery, (3) that the policy provided full coverage because the injuries arose from the necessary and incidental operations of Seductions's nightclub, (4) that Mauricio had suffered separately covered

---

[1] Century also sought reformation of Seductions's insurance policy to incorporate CGL 1704's explicit exclusion of coverage for assault and battery claims. Century has not appealed the district court's denial of its motion for summary judgment on the reformation count.

"personal and advertising injury" because Seductions had wrongfully evicted him from its premises, and (5) that the policy's cap on medical expenses was ambiguous and therefore did not apply.

The district court rejected the Aranas' arguments and entered summary judgment in Century's favor. The court concluded, first, that CGL 1717 effectively limited coverage for assault and battery claims to $25,000 and, second, that Mauricio's injuries arose from an assault and battery. Third, it concluded that assault and battery were not necessary or incidental to the operation of Seductions's nightclub. Fourth, the court held that Mauricio could not have been wrongfully evicted from the nightclub because he lacked a possessory interest in the premises. Finally, the court concluded that the policy's $2,000 Medical Expense Limit applied to Mauricio's medical expenses. This appeal followed.

## II. STANDARD OF REVIEW

We review a grant of summary judgment *de novo*. *State Farm Fire & Cas. Co. v. Steinberg*, 393 F.3d 1226, 1230 (11th Cir. 2004). We likewise review the district court's determination of coverage under an insurance policy *de novo*. *Fireman's Fund Ins. Co. v. Tropical Shipping & Constr. Co.*, 254 F.3d 987, 1003 (11th Cir. 2001). Because our subject matter jurisdiction in this case is based on diversity of citizenship, 28 U.S.C. § 1332, Florida law governs the determination

5

of the issues on appeal. *Steinberg*, 393 F.3d at 1230. Under Florida law, "insurance contracts are construed according to their plain meaning," but any ambiguities must be construed in favor of the insured. *Taurus Holdings, Inc. v. U.S. Fid. & Guar. Co.*, 913 So. 2d 528, 532 (Fla. 2005). Policy provisions are only ambiguous if "susceptible to more than one reasonable interpretation, one providing coverage and the []other limiting coverage." *Auto-Owners Ins. Co. v. Anderson*, 756 So. 2d 29, 34 (Fla. 2000).

## III. DISCUSSION

On appeal, the Aranas repeat the arguments made before the district court, and we address them in turn. First, we agree with the district court that the policy unambiguously limited coverage for losses arising from assault and battery. Even in the absence of form CGL 1704's explicit exclusion of coverage, CGL 1717's provision of "Limited Coverage – Assault & Battery" clearly limited Century's indemnification obligation to $25,000 per occurrence of injury "arising from an assault and battery."

We also conclude that CGL 1717's $25,000 sublimit applies to Mauricio's injuries because they arose from an assault and battery. We find unpersuasive the Aranas' arguments that CGL 1717 narrowly encompassed intentional acts and that Mauricio's injuries arose instead from acts of negligence. The Florida Supreme

6

Court has held that the words "arising out of" in an insurance policy are unambiguous and broad in scope: "The term 'arising out of' is broader in meaning than the term 'caused by' and means 'originating from,' 'having its origin in,' 'growing out of,' 'flowing from,' 'incident to' or 'having a connection with.'" *Taurus Holdings*, 913 So. 2d at 539 (citation omitted). CGL 1717's "arising from" language is entitled to the same broad interpretation. *Cf. Church & Tower of Fla., Inc. v. BellSouth Telecomms., Inc.*, 936 So. 2d 40 (Fla. Dist. Ct. App. 2006) (applying *Taurus Holdings* to a coverage provision including the term "arising from"). The Aranas' artful pleading of claims sounding in negligence does not change the fact that Mauricio's injuries arose directly from an allegedly intentional attack.

Our interpretation of CGL 1717's application to the Aranas' negligence claims is consistent with the general approach Florida courts have taken when considering negligence claims related to assault and battery. *See Miami Beach Entm't, Inc. v. 1st Oak Brook Corporate Syndicate*, 682 So. 2d 161, 162 (Fla. Dist. Ct. App. 1996) ("Although the complaint was couched in terms of the bar owner's negligence . . . for purposes of determining insurance coverage, the injuries arose from the assault and battery."); *Britamco Underwriter's, Inc. v. Zuma Corp.*, 576 So. 2d 965, 965 (Fla. Dist. Ct. App. 1991) ("Appellee concedes that the patron was

7

injured by an assault and battery but contends that coverage is nevertheless available because the legal theory upon which the patron obtained a judgment was negligence in failing to provide adequate security. We agree with the appellant that the policy excludes coverage for this claim, which clearly arises out of an assault and battery."). [2] Although the court in one Florida case refused to apply an assault and battery exclusion to a negligent retention claim, its decision relied on the fact that the exclusion at issue "cover[ed] a number of intentional torts," and the court construed the lengthy list of excluded torts as ambiguous with respect to acts of negligence. *Mactown, Inc. v. Cont'l Ins. Co.*, 716 So. 2d 289, 291 (Fla. Dist. Ct. App. 1998). In this case, by contrast, CGL 1717 refers only to injuries arising from assault and battery, and we agree with the district court that this limitation on coverage unambiguously extends to the Aranas' negligence claims.

We accordingly reject the Aranas' argument that CGL 1717's sublimit does not apply here because Mauricio's injuries were caused by the negligent provision of security services "necessary or incidental to" the operation of Seductions's nightclub. "Under Florida law, insurance contracts are construed according to

---

[2] The Aranas argue that *Miami Beach Entertainment* and *Britamco Underwriter's* involved policies that explicitly excluded negligence claims related to assault and battery, but neither decision relied on that fact in determining whether the claims at issue arose from an assault and battery.

8

their plain meaning," *Taurus Holdings*, 913 So. 2d at 532, and courts may consult dictionaries to supply the accepted meanings of words, *Garcia v. Fed. Ins. Co.*, 969 So. 2d 288, 291–92 (Fla. 2007). Common definitions of *incidental* include "occurring merely by chance or without intention or calculation," "being likely to ensue as a chance or minor consequence," and "met or encountered casually or by accident." *Webster's Third New International Dictionary* 1142 (1986). Although negligence in the provision of security services might qualify as "incidental to" the operation of an adult nightclub under other circumstances, the Seductions employees' alleged attack did not occur merely by chance, without intention, or by accident. The assault and battery Mauricio suffered thus were not "incidental" to the operation of Seductions's business. Nor were they "necessary."

The Aranas next argue that the policy provided coverage for Mauricio's injuries because Seductions wrongfully evicted him from its nightclub. At issue is whether his lack of a possessory interest in the premises meant that he could not have been wrongfully evicted. Although we previously have noted, applying Florida insurance law, that "[b]oth 'wrongful entry' and 'eviction' imply an interference with possessory rights," *City of Delray Beach v. Agric. Ins. Co.*, 85 F.3d 1527, 1534 (11th Cir. 1996), no Florida court has directly confronted the

9

issue.[3]  Courts in many jurisdictions with decisions on point have required at least a temporary possessory interest in the premises before finding a wrongful eviction, but other courts have disagreed.[4]

Ultimately, however, CGL 1717's sublimit on assault and battery coverage applies regardless of whether Mauricio was wrongfully evicted from Seductions's nightclub.[5]  The Aranas' wrongful eviction argument relies on the assumption that "personal and advertising injury" is not subject to CGL 1717's sublimit, but no language in the policy supports such a restrictive interpretation of the endorsement's scope.  On the contrary, CGL 1717 simply states that a $25,000 sublimit is "applicable to a covered loss arising from an assault and battery."  In the absence of ambiguity, Florida law "does not allow courts to rewrite contracts, add meaning that is not present, or otherwise reach results contrary to the

---

[3] The Aranas cite *Accredited Bond Agencies, Inc. v. Gulf Insurance Co.*, 352 So. 2d 1252 (Fla. Dist. Ct. App. 1977), but that case involved a child allegedly assaulted in the doorway of his own home.  Although the court concluded that the claims in that case fell within the defendant company's insurance coverage for "wrongful eviction," it did not discuss the legitimacy or significance of the child's possessory interest in the home.

[4] *Compare, e.g.*, *Zelda, Inc. v. Northland Ins. Co.*, 66 Cal. Rptr. 2d 356, 363–64 (Cal. Ct. App. 1997) (rejecting an injured restaurant patron's argument that an employee's assault and battery constituted a "wrongful eviction" under the restaurant's liability insurance policy), *with Z.R.L. Corp. v. Great Cent. Ins. Co.*, 510 N.E.2d 102, 104 (Ill. App. Ct. 1987) ("'[W]rongful eviction' includes making a patron leave a restaurant.").

[5] Although the district court did not discuss CGL 1717's application to the policy's "personal and advertising injury" coverage, we may affirm its judgment "on any ground that finds support in the record."  *Jaffke v. Dunham*, 352 U.S. 280, 281 (1957).

10

intentions of the parties." *Excelsior Ins. Co. v. Pomona Park Bar & Package Store*, 369 So. 2d 938, 942 (Fla. 1979). There is no ambiguity here; Seductions's insurance policy "covered" losses due to "bodily injury" and "personal and advertising injury" alike, and CGL 1717's $25,000 sublimit applies by its terms to both.

Finally, we conclude that the policy's $2,000 Medical Expense Limit applies to the Aranas' claims. They argue that the policy is ambiguous because, although the declarations page provides for a $2,000 limit on medical expenses, "Section III – Limits of Insurance" states, "The [$2 million] General Aggregate Limit is the most we will pay for the sum of . . . [m]edical expenses." We conclude, however, that these two provisions are unambiguous and entirely consistent with one another. On one hand, Section III explains that "the Medical Expense Limit is the most [Century] will pay . . . for all medical expenses because of 'bodily injury' sustained by any *one* person" (emphasis added). The policy's $2 million General Aggregate Limit, on the other hand, is the most Century will pay for the *sum* of medical expenses, including those incurred by multiple persons across multiple occurrences. Mauricio Arana is one person seeking medical expenses arising from a single occurrence, and the policy caps coverage for said expenses at $2,000.

11

## IV. CONCLUSION

In light of our conclusion that the policy in this case unambiguously limited Century's indemnification obligation for Mauricio Arana's injuries to $25,000, with a $2,000 limit on coverage for his medical expenses, the district court's summary judgment in Century's favor is

**AFFIRMED.**