GEOVERA SPECIALTY INSURANCE COMPANY f/k/a USF & G Specialty Insurance Corporation, a foreign corporation, Plaintiff,

v.

Christopher X. HUTCHINS, individually, Anthony Fraccalvieri and Zulema Rodriguez, individually, and as the Co–Personal Representatives of the Estate of Jessica Leigh Fraccalvieri, deceased, Defendants.

Case No. 8:09–CV–1973–T–17EAJ.

United States District Court,
M.D. Florida.
Tampa Division.

Dec. 21, 2011.

Andrew Edward Grigsby, John J. Cavo, Hinshaw & Culbertson, Miami, FL, for Plaintiff.

Lee Delton Gunn, IV, Laura K. Whitmore, Gunn Law Group, PA, Tampa, FL, Gene Odom, Martinez Odom Law Group, Brandon, FL, for Defendants.

## ORDER ON CROSS MOTIONS FOR SUMMARY JUDGMENT

ELIZABETH A. KOVACHEVICH, District Judge.

THIS CAUSE is before this Court on:

Dkt. 36   Amended Complaint
Dkt. 37   Defendants' Answer and Counterclaim
Dkt. 45   Plaintiff's Response to Counterclaim
Dkt. 32   Defendants' Motion for Summary Judgment

Dkt. 35   Plaintiff's Amended Motion for Summary Judgment
Dkt. 41   Defendants' Response to Amended Summary Judgment Motion
Dkt. 44   Plaintiff's Response to Summary Judgment Motion
Dkt. 48   Notice of Filing Final Judgment
Dkt. 49   Deposition
Dkt. 52   Notice of Supplemental Authority
Dkt. 61   Motion to Adopt Pleadings
Dkt. 62   Order

In the Amended Complaint (Dkt. 36), Plaintiff GEOVERA SPECIALTY INSURANCE COMPANY f/k/a USF & G SPECIALTY INSURANCE CORPORATION("Plaintiff") seeks a declaratory judgment on three counts. Count I seeks a declaratory judgment that Plaintiff has no duty to defend or indemnify based on the allegations of the Complaint; Count II seeks a declaratory judgment that Plaintiff has no duty to indemnify based on actual facts; and Count III seeks a declaratory judgment that there is no coverage for punitive damages awarded in an underlying state action ("Underlying Action").[1] Defendants, ANTHONY FRACCALVIERI and ZULEMA RODRIGUEZ ("Defendants"), assert a counterclaim for a declaratory judgment that Plaintiff has a duty to provide coverage, a duty to defend, and a duty to indemnify.

Defendant Hutchins filed a Chapter 7 Petition in U.S. Bankruptcy Court on August 19, 2011. The Trustee of Defendant's Bankruptcy Estate, Christine Herendeen, has adopted the Motion for Summary Judgment (Dkt. 32) and the Response in Opposition to Plaintiff's Amended Motion for Summary Judgment (Dkt. 41).

Plaintiff defended its insured under a reservation of rights in Case No. 51–2007–CA–002301–AWS, filed in Pasco County Circuit Court. The trial in the Underlying Action was held in April of 2010. On or about April 15, 2010, a jury returned a verdict in favor of FRACCALVIERI and RODRIGUEZ. The jury awarded damages as follows: $2,000,000.00 for A.F., Jessica Leigh Fraccalvieri's ("Decedent") minor child, $1,000,000.00 for Theresa Caperna, Decedent's mother, $1,025,000.00 for Anthony Fraccalvieri, Decedent's father, and $500,000.00 in punitive damages assessed against CHRISTOPHER X. HUTCHINS. (Dkt. 32–7).

Both Plaintiff and Defendants have filed a motion for summary judgment. Having considered the parties' submissions and pertinent law, the Court grants Plaintiff's Motion for Summary Judgment and denies Defendants' Motion for Summary Judgment.

I.   Preliminary Issue

On 9/27/2010, Plaintiff requested leave to file an Amended Complaint, and attached a proposed amended complaint (Dkt. 27). The Court granted the Motion (Dkt. 28). The Amended Complaint was filed on 10/5/2010 (Dkt. 36). Defendants' Motion for Summary Judgment is directed to the Amended Complaint, although the Amended Complaint was not filed until after Defendants' Motion was filed. Plaintiff filed an Amended Motion for Summary Judgment (Dkt. 35) which is directed to the Amended Complaint.

II.   Standard of Review

Summary judgment should be rendered if the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to

---

1. The current action before this Court stems from a jury verdict in a state civil action in the Circuit Court of the Sixth Judicial Circuit in and for Pasco County, Florida, Case No. 51–2007–CA–002301–WS, styled, ANTHONY FRACCALVIERI, as Personal Representative of the Estate of JESSICA LEIGH FRACCALVIERI, deceased, Plaintiff v. CHRISTOPHER X. HUTCHINS, et al.

any material fact and that the movant is entitled to judgment as a matter of law. Fed.R.Civ.P. 56(c).

The plain language of Rule 56(c) mandates the entry of summary judgment after adequate time for discovery and upon motion, against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial.

*Celotex Corp. v. Catrett*, 477 U.S. 317, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986).

The appropriate substantive law will guide the determination of which facts are material and which facts are ... irrelevant. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986). All reasonable doubts about the facts and all justifiable inferences are resolved in favor of the nonmovant. *See Fitzpatrick v. City of Atlanta*, 2 F.3d 1112, 1115 (11th Cir.1993). A dispute is genuine "if the evidence is such that a reasonable jury could return a verdict for the non-moving party." *See Anderson*, 477 U.S. at 248, 106 S.Ct. 2505. But, "[i]f the evidence is merely colorable ... or is not significantly probative ... summary judgment may be granted." *Id.* at 249–50, 106 S.Ct. 2505.

## III. Statement of Facts

1. Plaintiff insured Lizzie Myrick with homeowner's policy No. GH20028088 ("the Policy") with an effective date of August 26, 2005, to August 26, 2006. (Dkt. 35–1). Lizzie Myrick is the grandmother of Christopher X. Hutchins ("Hutchins"). (Dkt. 32–2 p. 6:11–16).

2. On February 1, 2006, and continuing into to early morning hours of February 2, 2006, Hutchins shot Decedent Jessica Leigh Fraccalvieri ("JLF") in the neck, resulting in Decedent's death. (Dkt. 32–1

p. 1; Dkt. 32–2 p. 17:12, p. 18:17–18; p. 25:10–14).

3. At the time of the shooting, Hutchins was living with the insured, his grandmother, Ms. Myrick. (Dkt. 32–2 p. 6:11–16). Neither party contests that Hutchins is an insured.

4. The following provisions of the Policy at issue are relevant(Dkt. 35–1):

## SECTION II—LIABILITY COVERAGES

### A. Coverage E—Personal Liability

If a claim is made or a suit is brought against an "insured" for damages because of "bodily injury" or "property damage" caused by an "occurrence" to which this coverage applies, we will:

1. Pay up to our limit of liability for the damages for which an "insured" is legally liable. Damages include prejudgment interest awarded against an "insured"; and

2. Provide a defense at our expense by counsel of our choice, even if the suit is groundless, false or fraudulent. We may investigate and settle any claim or suit that we decide is appropriate. Our duty to settle or defend ends when our limit of liability for the "occurrence" has been exhausted by payment of a judgment or settlement.

\* \* \*

**THIS ENDORSEMENT CHANGES THE POLICY, PLEASE READ IT CAREFULLY.**

**USF & G SPECIALTY INSURANCE COMPANY SPECIAL PROVISIONS**

### DEFINITIONS

The definition of "occurrence" is replaced by the following:

8. "Occurrence" means an accident, including continuous or repeated exposure to substantially the same general harmful conditions, which results, during the policy period, in:

a. "Bodily injury"; or

b. "Property damage".

Assault and battery is not an "occurrence", whether or not committed by or at the direction of an "insured".

\* \* \*

**SECTION II—EXCLUSIONS**

The following exclusions are added to **E. Coverage E.—Personal Liability AND Coverage F—Medical Payments To Others:**

**Assault or Battery**

"Bodily injury" or "property damage" arising out of assault or battery, whether or not committed by or at the direction of an "insured".

**Punitive or Exemplary Damages**

Punitive or exemplary damages, or any costs or interest attributable to such damages.

5. On the night of the shooting, Hutchins and Decedent were inside 'Calendar Girls' and interacting in a friendly manner. (Dkt. 32–3 pp. 18–20).

6. As the group of friends left 'Calendar Girls', including Decedent and Hutchins, Hutchins retrieved a recently purchased handgun to 'show off' to Decedent. (Dkt. 32–2 pp. 13, 18–20).

7. Hutchins was a first-time gun owner. (*Id.* pp. 13–14). At the time Hutchins retrieved the gun, Hutchins thought it was possible that there was a bullet in the clip, but he was unsure whether there was a bullet in the chamber. (*Id.* p. 22:14–19).

8. Hutchins then approached Decedent while Decedent was sitting in the driver's side seat of a vehicle with the window halfway down. (*Id.* p. 20:22–21:5; p. 23:5–10; p. 24:13–16).

9. Hutchins proceeded to 'show off' the gun to Decedent by facing the gun towards Decedent so she would acknowledge it. (*Id.* p. 21:16–19).

10. Decedent's roommate, Jennifer Clarke, was sitting in the passenger front side seat of the vehicle in which Decedent was also seated. (Dkt. 32–3 pp. 22:23–23:4).

11. Clarke recalls Decedent had the vehicle in reverse and was ready to pull out as Hutchins approached Decedent. Clarke further recalls Decedent's window being down and Hutchins placing the gun against Decedent's neck. (*Id.* p. 24:5–8; p. 24:15–16).

12. The testimony of John Thogmartin, M.D., in the Underlying Action was that Hutchins placed the barrel of the gun against Decedent's neck when the bullet was discharged. Specifically, Dr. Thogmartin testified, "it's with absolute certainty this gun was pressed up against her neck when it was fired." (Dkt. 35–3 p. 20:2–4; p. 24:21–22).

13. At the time Hutchins was displaying his gun to Decedent, Hutchins' finger was on the trigger. Hutchins' gun then discharged a bullet, resulting in Decedent's death. (Dkt. 32–2 p. 25:10–14; pp. 25:22–26:2).

14. Defendants admit there is nothing to impeach any of the witnesses' testimony regarding the shooting. (Dkt. 32 p. 7).

**IV. Discussion**

The basis of jurisdiction is diversity. Plaintiff issued and delivered the insurance policy in Florida. The subject insurance policy insured Florida residents and property located in Florida. The Court there-

fore applies Florida law to the substantive issues in this case.

### A. Count I—Duty to Defendant and Duty to Indemnify, Based on Allegations of Complaint

Plaintiff argues that Hutchins' actions constitute an assault or battery within the policy exclusion definition, and therefore, Plaintiff has no duty to defend or indemnify Defendants. Defendants argue that Hutchins' actions were not an assault or battery within the policy exclusion definition, but instead an act of negligence resulting in coverage under the Policy.

### 1. Controlling Principles

■ Under Florida law, the issue of an insurer's duty to defend a lawsuit against its insured is governed by the terms of the policy and the allegations of the complaint. *See Nat'l Union Fire Ins. Co. v. Lenox Liquors, Inc.*, 358 So.2d 533, 536 (Fla.1977) ("The allegations of the complaint govern the duty of the insurer to defend."); *McCreary v. Fla. Residential Prop. & Cas. Joint Underwriting Ass'n*, 758 So.2d 692, 695 (Fla. 4th DCA 2000) (" '[t]he duty of an insurer to defend is determined *solely* by the allegations of the complaint against the insured' and 'an insurer has no duty to defend a suit against an insured if the complaint on its face alleges a state of facts that fails to bring the case within the coverage of the policy.' ") (emphasis in original) (quoting *Marr Invs., Inc. v. Greco*, 621 So.2d 447, 449 (Fla. 4th DCA 1993)); *Baron Oil Co. v. Nationwide Mut. Fire Ins. Co.*, 470 So.2d 810, 813 (Fla. 1st DCA 1985) ("The rule is firmly established in Florida that a liability insurer's obligation to defend a claim made against its insured must be determined from the allegations in the complaint."); *C.A. Fielland, Inc. v. Fid. & Cas. Co.*, 297 So.2d 122, 127 (Fla. 2d DCA 1974) ("The

duty to defend, in the first instance, is determined from the allegations of the complaint."). This rule is often called the "eight corners rule," a reference to the four corners of the policy and the four corners of the complaint. *See Colony Ins. Co. v. Barnes*, 410 F.Supp.2d 1137 (N.D.Fla.2005). If the complaint alleges any claim that, if proven, might come within the insurer's indemnity obligation, the insurer must defend the entire action. *Id.* at 1139.

■ The construction of an insurance policy is a question of law for the court. *Jones v. Utica Mutual Ins. Co.*, 463 So.2d 1153, 1157 (Fla.1985); *Roberts v. Florida Lawyers Mutual Ins. Co.*, 839 So.2d 843, 845 (Fla. 4th DCA 2003). When construing insurance policies, courts are to read the policy as a whole and attempt to give every provision its full meaning and operative effect. *See Auto–Owners Ins. Co. v. Anderson*, 756 So.2d 29, 34 (Fla.2000). Any ambiguities in an insurance policy are to be interpreted liberally and in favor of the insured and strictly against the insurer. *See Flores v. Allstate Ins. Co.*, 819 So.2d 740, 744 (Fla.2002); *Anderson*, 756 So.2d at 34; *McCreary v. Fla. Residential Prop. & Cas. Joint Underwriting Ass'n*, 758 So.2d 692, 694–95 (Fla. 4th DCA 1999). A policy is ambiguous when the language is subject to "more than one reasonable interpretation, one providing coverage and the [sic] another limiting coverage...." *Anderson*, 756 So.2d at 34. Under Florida law, an insured bears the burden of proving that a claim is covered within an insurance policy. *LaFarge Corp. v. Travelers Indem. Co.*, 118 F.3d 1511, 1516 (11th Cir. 1997) (internal citations omitted). The burden of proving an exclusion to coverage is, however, on the insurer. *Id.*

■ As the duty to defend is broader than the duty to indemnify, if a court determines there is no duty to defend, as a

matter of law there cannot be a duty to indemnify. *WellCare of Florida, Inc. v. American International Specialty Lines Ins. Co.*, 16 So.3d 904, 906 (Fla. 2d DCA 2009) ("[T]he duty to indemnify is narrower than the duty to defend and thus cannot exist if there is not duty to defend.") (citing *Aetna Ins. Co. v. Borrell–Bigby Elec. Co.*, 541 So.2d 139, 141 (Fla. 2d DCA 1989) and *Fun Spree Vacations, Inc. v. Orion Ins. Co.*, 659 So.2d 419, 421 (Fla. 3d DCA 1995)). "An insurer has no duty to defend a lawsuit where the underlying complaint does not allege facts that would bring the complaint within the coverage of the policy." *Auto–Owners Ins. Co. v. Marvin Dev. Corp.*, 805 So.2d 888, 891 (Fla. 2d DCA 2001).

### 2. The Policy at Issue

■ "Occurrence" is defined within the policy as an accident, including continuous or repeated exposure to the same general harmful conditions. The definition of "occurrence" expressly excludes an act of assault and battery. This Court has previously held that a similar definition of occurrence was unambiguous and did not include an assault or battery. *See Council v. Paradigm Ins. Co.*, 133 F.Supp.2d 1339 (M.D.Fla.2001).

■ Assault and battery are not defined within the Policy. However, the lack of an operative definition or a word of phrase does not mean that an insurance policy is ambiguous. *Container Corp. of America v. Maryland Cas. Co.*, 707 So.2d 733, 736 (Fla.1998). Courts should apply the plain meaning of a word or phrase used within an insurance policy when a definition is not given. *Southeastern Fire. Ins. Co. v. Lehrman*, 443 So.2d 408, 409 (Fla. 4th DCA 1984). "Absent a definition of a term in a document or policy, [courts] may utilize the plain and generally accepted meaning of the term." *Guideone Elite Ins. Co.*

*v. Old Cutler Presbyterian Church, Inc.*, 420 F.3d 1317, 1327 n. 6 (11th Cir.2005) (quoting *Bohrer v. Church Mut. Ins. Co.*, 965 P.2d 1258, 1263 (Colo.1998)). In analyzing assault and battery where the policy does not include a definition, the Court looks to how Florida law defines those terms. *Colony Ins. Co.*, at 1141.

In the First Amended Complaint in the Underlying Action, the plaintiffs alleged that "At that time and place, Defendant, Christopher X. Hutchins, placed the handgun to Jessica Leigh Fraccalvieri's neck and pulled the trigger." (Dkt. 37–1, par. 13), "[a]t that time Defendant, Christopher X. Hutchins, did not have knowledge that there was a bullet in the barrel of the handgun." (Par. 14) and "Said actions were a direct and proximate cause of decedent, Jessica Leigh Fraccalvieri's, death." (Par. 16).

■ Assault has been defined as "an intentional, unlawful threat by word or act to do violence to the person of another, coupled with an apparent ability to do so, and doing some act which creates a well founded fear of such violence being done." *Wilson v. State*, 265 So.2d 411, 413 (Fla. 4th DCA 1972). As defined in Florida law, the elements of assault include an intentional threat by an act, coupled with an apparent ability to carry out the threat, that creates a fear of imminent violence; the required intent is to do the act, not the intent to do violence to the victim. *Cambell v. State*, 37 So.3d 948 (Fla. 5th DCA 2010). The element of intent in civil assault does not necessarily involve the subjective intent to do harm. *See Spivey v. Battaglia*, 258 So.2d 815 (Fla.1972). The acts of intentionally placing a handgun on a person's neck and pulling the trigger are acts which constitute an intentional threat to do violence, coupled with an apparent ability to do so, and which create a well-founded fear of such violence being done.

A loaded handgun is a deadly weapon, and its presence is sufficient to establish the presence of a threat to personal safety. The victim's actual state of mind is irrelevant; the question is whether the act is one which would create the well-founded fear that the perpetrator had the intent to do violence. *See S.P.M. v. State,* 66 So.3d 317 (Fla. 2d DCA 2011)(objective reasonable person standard).

■ A battery is the infliction of a harmful or offensive contact upon another with the intent to cause such contact or apprehension that such contact is imminent. *Quilling v. Price,* 894 So.2d 1061, 1063 (Fla. 5th DCA 2005); *Paul v. Holbrook,* 696 So.2d 1311, 1312 (Fla. 5th DCA 1997). The harmful contact may be either the placing of the gun against Decedent's neck or the firing of the bullet into Decedent's neck. Again, the intent required is to do the act, not the resultant harm. A finding that Defendant Hutchins committed a battery is supported by the underlying complaint.

Assault and battery are excluded from the definition of an "occurrence," which would trigger coverage, and liability for bodily injuries arising from assault or battery, whether or not committed by or at the direction of an insured is unambiguously excluded from coverage. The factual allegations of the Underlying Complaint are sufficient to establish an assault or battery carried out by Defendant Hutchins. As the policy exclusion was written disjunctively, as an assault or battery, this Court need not make a determination if an assault exists, as it is clear from the facts that Hutchins battered Decedent. The presence of allegations that Defendant Hutchins did not intend to harm the decedent or to scare the decedent do not create doubt (Par. 33) as to the duty to defend because the facts as alleged in the First Amended Corrected Complaint (Dkt. 37–1) establish an assault or battery carried out by Defendant Hutchins.

■ There cannot be a duty to defend where the allegations of the insured fall within a policy exclusion. *Hatmaker v. Liberty Mut. Fire Ins. Co.,* 308 F.Supp.2d 1308, 1316 (M.D.Fla.2004). While Defendants maintain that it was the negligence of Hutchins and not intentional acts that brought about the resultant harm, Defendants' argument is unconvincing. A duty to defend cannot be triggered merely by labeling an intentional act "negligent." Where the facts alleged establish intentional conduct, but the claim asserts negligence, the negligence label should be disregarded. *See, e.g., Aetna Cas. & Sur. Co. v. Miller,* 550 So.2d 29 (Fla. 3d DCA 1989); and *Cabezas v. Fla. Farm Bureau Cas. Ins. Co.,* 830 So.2d 156 (Fla. 3rd DCA 2002). A wolf dressed in a sheep's clothing may present a clever disguise; however, a wolf is still a wolf. As Plaintiff has no duty to defend, Plaintiff cannot have a duty to indemnify.

Based on the allegations of the Underlying Complaint, the Court finds that Plaintiff has no duty to defend, and no duty to indemnify. After consideration, the Court grants summary judgment to Plaintiff as to Count I.

**B. Count II—Duty to Indemnify Based on Actual Facts**

■ Assault and battery are expressly excluded from the meaning of "occurrence" that would trigger coverage. Defendants have the burden of proving coverage.

The policy also excludes liability for injuries arising from an assault or battery, whether or not committed by or at the direction of an insured. The burden of proving that the decedent's injuries arose from an assault or battery, and are there-

fore within the policy exclusion, is on Plaintiff.

The Court notes that Defendant Hutchins entered a plea of guilty to the charge of Manslaughter, Sec. 782.07(1), *Florida Statutes*, which provides:

(1) The killing of a human being by the act, procurement, or culpable negligence of another, without lawful justification, according to the provisions of chapter 776 and in cases in which such killing shall not be excusable homicide or murder, according to the provisions of this chapter, is manslaughter, a felony of the second degree, punishable as provided in s. 775.082, s. 775.083, or s. 775.084.

Collateral estoppel bars Defendant Hutchins from relitigating the facts which form the basis of final judgment against Defendant.

Defendants have argued that the actions of Hutchins were negligent and not intentional, therefore within coverage under the Policy. Defendants cite to *Swindal v. Prudential Property & Cas. Ins. Co.*, 599 So.2d 1314, 1317 (Fla. 2d DCA 1992), in support of this argument. In *Swindal*, Mr. Swindal was shot with a gun during an argument with Mr. Castellano and Mr. Swindal sought to enforce insurance coverage. *Id.* at 1315. While Defendants rely on *Swindal* as illustrative that an act of negligence, even if occurring within the same time frame as an intentional act, is within coverage if such negligence is a result of unexpected or unintended negligent acts and not the result of an intentional act, this Court disagrees. *Swindal* is distinguishable from the instant case in two key respects.

First, at the time the gun was fired in *Swindal*, there was a struggle between Mr. Castellano and Mr. Swindal. *Id.* at 1316. This is significant because Mr. Castellano denied purposely pulling the trigger and the possibility exists that Mr.

Swindal fired the gun during the struggle. *Id.* at 1317. In the instant case, there was no such struggle and it remains undisputed that Hutchins was the sole possessor of the gun. There is no evidence before this Court that Decedent was ever in possession of, or even touched, the gun that resulted in Decedent's death. Hutchins was the sole possessor and there is no evidence to the contrary.

Secondly, in *Swindal* Mr. Castellano was found not guilty in the underlying criminal proceeding. *Id.* at 1317. In the instant case, Defendant Hutchins entered a plea of guilty to Manslaughter in violation of Florida Statute 782.07(1) in Case No. 0600548CFAWS in the Circuit Court of the Sixth Judicial Circuit In and For Pasco County, Florida. Hutchins' adjudication of guilt for manslaughter further establishes Hutchins' voluntary actions. Hutchins' volitional choice to 'show off' the gun and place the gun against Decedent's neck was his choice, and his choice alone.

Under Florida law, the phrase "arising out of" has been held to be unambiguous, and is equivalent to the terms "originating from," "having origin in," "growing out of," "flowing from," "incident to" or "having connection with," but does not mean proximate cause. *See Taurus Holdings, Inc. v. U.S.F. & G. Co.*, 913 So.2d 528 (Fla.2005).

Florida courts have construed assault and battery exclusions to preclude acts of negligence arising from an assault or battery. *See, e.g., Century Surety Co. v. Seductions, LLC*, 609 F.Supp.2d 1273, 1277 (S.D.Fla.2009)(citing *Taurus Holdings*, 913 So.2d at 539–40), *affirmed*, 349 Fed.Appx. 455 (11th Cir.) (Unpublished); *Perrine Food Retailers, Inc. v. Odyssey Re (London) Ltd.*, 721 So.2d 402, 404 (Fla. 3d DCA 1998) (holding that negligence claims against store owner for failing to maintain premises or provide adequate security

arose out of an assault and battery where patron was robbed at knife point and stabbed, ultimately triggering the policy's assault and battery exclusion); *Miami Beach Entertainment, Inc. v. First Oak Brook Corp. Syndicate*, 682 So.2d 161, 162 (Fla. 3d DCA 1996) (holding summary judgment based upon policy exclusion proper where claim based on negligence arose out of assault and battery). As established above, a battery was committed despite the Defendants' pleading of negligence in the complaint in the Underlying Action.

This Court's ruling that a battery was committed within the Policy exclusion definition is supported by *Those Certain Underwriters at Lloyds London Who Subscribe to Policy No. TCN 002547 v. Karma Korner, LLC*, 2011 WL 1150466 (M.D.Fla. 2011). In *Karma Korner*, the insurer brought an action seeking a declaratory judgment as to its obligation to defend and indemnify its insured, Karma Korner, from a shooting death that occurred on the insured's premises. *Id.* *1. The insurer argued that the policy's assault and battery exclusion applied and that the insurer did not have a duty to defend or indemnify in connection with the underlying state litigation. *Id.* Similar to the instant case, the argument was made that the policy failed to define battery, resulting in ambiguity. *Id.* *2. In applying tort definitions for assault and battery, Judge Antoon found that the policy did not provide coverage for the claim at issue. *Id.* *4.

Even viewing the facts in the light most favorable to the Defendants, it is clear that a battery was committed within the Policy exclusion definition. Defendant Hutchins voluntarily placed a gun against Decedent's neck, pulled the trigger, and ultimately killed Decedent. In a post-arrest statement, Defendant Hutchins stated that when he put the gun to the decedent's neck, the decedent said "Get that thing away." (Dkt. 32–1, p. 7). The Court finds that Defendant Hutchins' intentional acts which caused the death of the decedent bring the claims against Defendant Hutchins within the Policy exclusion for bodily injury arising from assault or battery.

After consideration, the Court finds that Plaintiff has no duty to indemnify, based on the actual facts of this case. After consideration, the Court grants Plaintiff's Motion for Summary Judgment as to Count II.

## C. Count III

Plaintiff seeks the entry of a declaratory judgment that there is no coverage for the punitive damages awarded in the Underlying Action. The subject insurance policy expressly excludes coverage for punitive damages. The language of the policy is clear and unambiguous.

The Court finds as a matter of law that there is no coverage for punitive damages. Therefore, Plaintiff has no duty to indemnify Defendant Hutchins for the portion of the jury verdict in the Underlying Action as it pertains to punitive damages, including any interest and costs associated with the punitive damages.

After consideration, the Court grants Plaintiff's Motion for Summary Judgment as to Count III. Accordingly, it is

ORDERED that Plaintiff's, GEOVERA SPECIALTY INSURANCE COMPANY f/k/a USF & G SPECIALTY INSURANCE CORPORATION, Motion for Summary Judgment (Dkt. 35) is granted and Defendants', ANTHONY FRACCALVIERI and ZULEMA RODRIGUEZ, Motion for Summary Judgment (Dkt. 32) is denied consistent with this opinion. The Clerk of Court shall enter a separate final judgment in favor of Plaintiff as to Counts I, II and III of the Amended Complaint,

and on Defendants' Counterclaim, and against Defendants FRACCALVIERI, RODRIGUEZ, and HUTCHINS. As to Count I, Plaintiff has no duty to defend and no duty to indemnify Defendants. As to Count II, Plaintiff has no duty to indemnify Defendants. As to Count III, Plaintiff has no duty to indemnify Defendants as to the amount awarded in the Underlying Action for punitive damages, including any costs and interest associated with the punitive damages.

As to Count I, the Court awards to Plaintiff the costs of defending Christopher X. Hutchins in the Underlying Action, and the cost of this action. The Court reserves jurisdiction for the determination of these costs, and directs that a separate motion for costs, with supporting materials, be filed in accordance with the Federal Rules of Civil Procedure and the Local Rules.

As to Count II, the Court awards to Plaintiff the costs of this action, and reserves jurisdiction for the determination of these costs.

As to Count III, the Court awards to Plaintiff the costs of this action, and reserves jurisdiction for the determination of these costs.

Upon entry of the final judgment, the Clerk of the Court is directed to close this case.